(No. 68681.—

BERNARD BATES, Appellee, v. BOARD OF EDUCA-
TION, ALLENDALE COMMUNITY CONSOLI-
DATED SCHOOL DISTRICT No. 17, Appellant.

*Opinion filed April 18, 1990.—Rehearing
denied May 31, 1990.*

Richard L. Kline, of Woodcock, Kline & Kaid, P.C., of Mt. Carmel, and Stephen H. Pugh, Jr., and David T.B. Audley, of Chapman & Cutler, of Chicago, for appellant.

John F. Borden and Michael F. Crowe, of Gosnell, Benecki, Borden & Enloe, Ltd., of Lawrenceville, for appellee.

JUSTICE CLARK delivered the opinion of the court:

On November 1, 1984, appellant, the board of education of Allendale Community Consolidated School District No. 17 (school district), approved the issuance of

$275,000 in "School Fire Prevention and Safety Bonds" in order to pay for safety improvements required to bring the Allendale school building into compliance with the requirements of the "Building Specifications for Health and Safety in Public Schools." The bonds bore an interest rate of 9.75%, which was within the applicable ceiling provided for in the Bond Authorization Act (Ill. Rev. Stat. 1983, ch. 17, par. 6601 *et seq.*).

On June 3, 1986, the appellee-taxpayers (taxpayers) brought a 10-count complaint against the school district alleging that the 9.75% interest rate contained in the bonds was invalid because it exceeded the 7% interest-rate ceiling set in section 17—2.11a of the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 17—2.11a). Section 17—2.11 authorizes school districts having a population of less than 500,000 inhabitants to levy a tax for the purpose of altering or reconstructing school buildings and equipment to meet fire prevention or safety regulations. (Ill. Rev. Stat. 1983, ch. 122, par. 17—2.11.) When a school district has levied a tax in accordance with the statutory provisions, it may borrow money and issue bonds without a referendum. At the time the bonds were issued, section 17—2.11a specifically provided that such bonds bear interest at a rate not to exceed 7% per annum. (Ill. Rev. Stat. 1983, ch. 122, par. 17—2.11a.) The Act also provided that "[t]his section is cumulative and constitutes complete authority for the issuance of bonds as provided in this Section notwithstanding any other statute or law to the contrary." Ill. Rev. Stat. 1983, ch. 122, par. 17—2.11a.

The school district argues that, section 17—2.11a notwithstanding, the interest-rate provisions contained in the Bond Authorization Act should apply to the bonds. Section 2 of that act provides:

"Notwithstanding the provisions of any other law to the contrary, any public corporation may agree or con-

tract to pay interest on bonds or other evidences of indebtedness and tax anticipation warrants issued pursuant to law at an interest rate or rates not exceeding the greater of 9% per annum or 125% of the rate for the most recent date shown in the 20 G.O. Bonds Index of average municipal bond yields as published in the most recent edition of The Bond Buyer." (Ill. Rev. Stat. 1983, ch. 17, par. 6602.)

The term "public corporations" as used in this section includes "any school district." (Ill. Rev. Stat. 1983, ch. 17, par. 6601(a).) Section 3 of that act provides that its provisions are cumulative and in addition to any powers or authority granted in any other laws of the State. Ill. Rev. Stat. 1983, ch. 17, par. 6603.

The circuit court of Wabash County determined that the school district was authorized to utilize the Bond Authorization Act to set the interest rate on its bonds, and dismissed count I of the complaint. On the taxpayers' motion, the circuit court held the dismissal of count I to be a final and appealable order under Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)). The appellate court reversed the judgment of the circuit court, holding that the 7% interest-rate ceiling contained in the School Code applied to the bonds issued by the school district. (183 Ill. App. 3d 164.) On May 24, 1989, the school district filed a petition for leave to appeal with this court. We granted leave to appeal (107 Ill. 2d R. 315).

After the appellate court rendered its decision, and while the cause was pending before this court, the General Assembly enacted Public Act 86—4, which became effective on June 6, 1989. Section 1 of Public Act 86—4 confirms the supplementary power of the omnibus bond acts. Section 1 provides:

"(d) All instruments providing for the payment of money executed by or on behalf of any governmental entity organized by or under the laws of this State *** which were:

(1) issued or authorized to be issued by proceedings adopted by such corporate authorities before the effective date of this amendatory Act of 1989;

(2) issued or authorized to be issued in accordance with the procedures set forth in or pursuant to any authorization contained in any of the Omnibus Bond Acts; and

(3) issued or authorized to be issued for any purpose authorized by the laws of this State,

are valid and legally binding obligations of the governmental entity issuing such instruments, payable in accordance with their terms." Pub. Act 86—4, §1, eff. June 6, 1989 (adding section 8 to the Statutory Construction Act (Ill. Rev. Stat. 1987, ch. 1, par. 1001 *et seq.*)).

Public Act 86—4 also amended section 17—2.11a of the School Code by deleting the 7% interest-rate ceiling and substituting "the maximum rate authorized by the Bond Authorization Act, as amended at the time of the making of the contract." (Pub. Act 86—4, §71, eff. June 6, 1989 (amending Ill. Rev. Stat. 1987, ch. 122, par. 17—2.11a).) Section 71 of Public Act 86—4 also added the following provision:

"With respect to instruments for the payment of money issued under this Section either before, on, or after the effective date of this amendatory Act of 1989, it is and always has been the intention of the General Assembly (i) that the Omnibus Bond Acts are and always have been supplementary grants of power to issue instruments in accordance with the Omnibus Bond Acts, regardless of any provision of this Act that may appear to be or to have been more restrictive than those Acts, (ii) that the provisions of this Section are not a limitation on the supplementary authority granted by the Omnibus Bond Acts, and (iii) that instruments issued under this Section within the supplementary authority granted by the Omnibus Bond Acts are not invalid because of any provision of this Act that may appear to be or to have been more restrictive than those Acts." Pub. Act 86—4,

§71, eff. June 6, 1989 (amending Ill. Rev. Stat. 1987, ch. 122, par. 17—2.11a).

In that it applies retroactively, Public Act 86—4 purports to govern the question of which interest rate is applicable to the bonds. The school district contends that Public Act 86—4 validates the bonds in question. The taxpayers contend that Public Act 86—4 violates the principle of separation of powers. We find that both parties are correct because there is a dual aspect to Public Act 86—4.

As noted previously, two separate sections of Public Act 86—4 are relevant to this appeal. Section 71 of Public Act 86—4 amends section 17—2.11a of the School Code. It deletes the 7% interest-rate provision previously contained in that section and authorizes school districts to issue bonds at "the maximum rate authorized by the Bond Authorization Act *** at the time of the making of the contract." Section 71 further states that it has always been the intention of the General Assembly that the omnibus bond acts apply to bonds issued under section 17—2.11a, regardless of the fact that the provisions of section 17—2.11a may have been more restrictive than those acts, and that instruments issued under that section that are within the authority granted by the omnibus bond acts, but exceeding the authority previously granted in section 17—2.11a, are not invalid. (Pub. Act 86—4, §71, eff. June 6, 1989 (amending Ill. Rev. Stat. 1987, ch. 122, par. 17—2.11a).) The legislature's declaration that it had always intended that bonds issued under this section be subject to the provisions of the omnibus bond acts is in direct conflict with the appellate court's construction of that section. It is apparent that the legislature, unhappy with the appellate court's interpretation of section 17—2.11a, is attempting to attribute to section 17—2.11a a construction different than the one given to that section by the appellate court.

This attempt is clearly a contravention of the principle of separation of powers. The principle of separation of powers in Illinois is derived from our State constitution, which contains an explicit separation of powers provision. Article II, section 1, provides that "[t]he legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another." (Ill. Const. 1970, art. II, §1.) In the context of the interplay between the legislature and the judiciary, this provision has been interpreted to mean that it is the legislature's role to make the law, and the judiciary's role to interpret the law. See *Roth v. Yackley* (1979), 77 Ill. 2d 423, 429.

When the appellate court interpreted section 17—2.11a, the court's explication of the statute became, in effect, a part of the statute. *(City of Decatur v. Curry* (1976), 65 Ill. 2d 350, 359.) While the General Assembly can pass legislation to prospectively change a judicial construction of a statute if it believes that the judicial interpretation was at odds with legislative intent (*Roth v. Yackley*, 77 Ill. 2d at 429), it cannot effect a change in that construction by a later declaration of what it had originally intended (*People v. Rink* (1983), 97 Ill. 2d 533, 541). Since section 71 of Public Act 86—4 attempts to attribute to section 17—2.11a, at the time it was interpreted by the appellate court, a construction different than that determined by the appellate court, we find that it violates the principle of separation of powers.

The other section of Public Act 86—4 that is relevant to this appeal is section 1. Section 1 does not amend any other statute, but purports to validate instruments which, when issued, exceeded the authority granted by the provision under which they were issued but were within the authority granted by the omnibus bond acts. Specifically, that section provides that all instruments providing for the payment of money executed on behalf

of any governmental entity which were issued pursuant to the authorization contained in any of the omnibus bond acts before the effective date of Public Act 86—4 are valid and legally binding obligations, payable in accordance with their terms. (Pub. Act 86—4, §1, eff. June 6, 1989 (adding section 8 to the Statutory Construction Act (Ill. Rev. Stat. 1987, ch. 1, par. 1001 *et seq.*)).) The school district contends that this provision validates the bonds at issue. We agree.

As concerning curative legislation, the general rule is that the legislature may by a curative act validate any proceeding which. it might have authorized in advance, provided the power be so exercised as not to infringe on or divest property rights and vested interests of the parties involved. (*Worley v. Idleman* (1918), 285 Ill. 214, 219.) In the present case, the defect was that the bonds bore an interest rate higher than that authorized in section 17—2.11a. At the time the bonds were originally issued, there was nothing which would have prevented the legislature from authorizing an interest rate above 7%, and that which the legislature could have originally authorized it might subsequently confirm and ratify. *People v. Holmstrom* (1956), 8 Ill. 2d 401, 404.

The fact that the appellate court had determined the bonds to be invalid at the 9.75% interest rate under the original section 17—2.11a does not affect this analysis. Prior to the amendment, section 17—2.11a did not authorize the issuance of bonds at an interest rate greater than 7%. That authority has been supplied by Public Act 86—4, and it makes no difference that bonds could not bear an interest rate above 7% under the power originally given. (See *Utter v. Franklin* (1899), 172 U.S. 416, 424, 43 L. Ed. 498, 501, 19 S. Ct. 183, 186.) Where the legislature changes the law pending an appeal, the case must be disposed of by the reviewing court under the law as it then exists, not as it was when the judgment

was entered in the lower court. (*Rios v. Jones* (1976), 63 Ill. 2d 488, 495; *People ex rel. Toman v. B. Mercil & Sons Plating Co.* (1941), 378 Ill. 142, 162-63.) Thus, this court in determining the validity of the bonds must apply the law as it presently exists, and section 17—2.11a, as it presently exists, authorizes bonds to be issued at an interest rate equal to the maximum authorized by the Bond Authorization Act.

Such a construction neither deprives the parties of vested rights, nor violates the principle of separation of powers. It does not deprive the parties of vested rights because, at the time that Public Act 86—4 became effective, a final judgment had not been rendered. It is true that in *Cory Corp. v. Fitzgerald* (1949), 403 Ill. 409, cited by the taxpayers, this court held that when a reviewing court remands a cause with specific directions which determined the rights of the parties, and upon remandment the trial court has only to enter a judgment or decree in accordance with the directions of the reviewing court, the judgment of the appellate court is a final order. However, in that case, the appellate court's decision was final because the parties did not pursue an appeal. (*Cory*, 403 Ill. at 414.) Since an appeal is a continuation of the same case (*Daly v. Kohn* (1907), 230 Ill. 436, 439), it follows that until either the time to appeal has expired or, if an appeal is being pursued, until the court of review has rendered a decision, the judgment is not a final adjudication. In the present case, at the time Public Act 86—4 became effective, although this cause was pending, judgment had not been entered by this court. Consequently, there was no final adjudication with respect to the rights of the parties to this appeal.

Nor does section 1 of Public Act 86—4 violate the separation of powers doctrine. This court has held that where a judgment or decree is based on the ground of want of authority from the legislature to issue bonds in

the manner in which they have been issued, the legislature is not, by reason of such judgment or decree, deprived of the right to pass a curative act validating such bonds, and that the legislature does not, by passing the curative act, invade the province of the judiciary or set aside any judgment or decree of court. (*Worley v. Idleman* (1918), 285 Ill. 214, 220.) Here, the appellate court determined that section 17—2.11a, as it existed, did not authorize the issuance of bonds bearing an interest rate greater than 7%. That authority has been supplied and the objection to the bonds which existed at the time of the appellate court's decision no longer exists. Since this section, unlike section 71 of Public Act 86—4, does not attempt to attribute to section 17—2.11a, at the time of the appellate court's decision, a meaning different than that declared in the opinion, it does not invade the province of the judiciary. See *Schlenz v. Castle* (1981), 84 Ill. 2d 196, 206-07.

Finally, the taxpayers claim that because the bonds in question exceeded the statutory interest-rate limitation at the time they were issued they are void, and cannot be validated by a curative act. They contend that although the General Assembly has the power to validate by curative act an irregular or defective exercise of authority, it cannot confer jurisdiction where none existed and cannot make a void proceeding valid. See *People ex rel. Gowdy v. Baltimore & Ohio R.R. Co.* (1943), 385 Ill. 86, 92.

While we agree with the taxpayers' statement of law, we find that it is inapplicable to this case. This court has held that bonds which bear an interest rate greater than that authorized by statute are not void, but are valid and binding obligations to the extent authorized. (*City of Quincy v. Warfield* (1861), 25 Ill. 279, 282.) Since the bonds in question are not void instruments but defective

ones, we find that the legislature has the power to validate them through a curative act.

The fact that a portion of Public Act 86—4 is invalid because it violates the principle of separation of powers does not affect the viability of the curative portion of that act. Section 1.31 of the Statutory Construction Act provides that if any provision of an act is held invalid, such invalidity does not affect other provisions or applications of the act which can be given effect without the invalid provision. (Ill. Rev. Stat. 1987, ch. 1, par. 1032.) In that section 1 of Public Act 86—4 can be given effect without reference to the invalid portion of section 71, we hold that section 1 of Public Act 86—4 properly validates the bonds in question.

For the foregoing reasons, the judgment of the appellate court is reversed and the cause is remanded to the circuit court of Wabash County for resolution of the remaining counts.

*Judgment reversed;*
*cause remanded.*