Johnson v. Edgar, Nos. 81019, 81249 cons.

NOTICE: Under Supreme Court Rule 367 a party has 21 days after the filing of the opinion

to request a rehearing. Also, opinions are subject to modification, correction or withdrawal at

anytime prior to issuance of the mandate by the Clerk of the Court. Therefore, because the

following slip opinion is being made available prior to the Court's final action in this matter,

it cannot be considered the final decision of the Court. The official copy of the following

opinion will be published by the Supreme Court's Reporter of Decisions in the Official

Reports advance sheets following final action by the Court.

                                    

         Docket Nos. 81019, 81249 cons.--Agenda 12--March 1997.

         DONALD JOHNSON et al., Appellees, v. JIM EDGAR et al.,

        Appellants.--IRV LANGA, Appellee, v. MARY A. GADE et al.,

                               Appellants.

                       Opinion filed May 22, 1997.

     JUSTICE BILANDIC delivered the opinion of the court:

     At issue in these consolidated appeals is the

constitutionality of Public Act 89--428, enacted by the Illinois

General Assembly on December 13, 1995. The plaintiffs in each case

challenged the Act as violative of the "single subject rule"

contained in article IV, section 8(d), of the Illinois Constitution

of 1970. The circuit court in each case ruled that the Act was

unconstitutional on this ground and ordered that the appellants are

permanently enjoined from enforcing any provision of the Act. We

now affirm in part and reverse in part the circuit courts'

judgments.

                                   FACTS

     The single subject rule concerns the method by which

legislation is enacted. We therefore begin with a review of the

procedural history and substance of Public Act 89--428.

                            Public Act 89--428

     Public Act 89--428 was introduced as Senate Bill 721 on March

2, 1995. At that time, the bill was entitled "An Act in relation to

prisoners reimbursement to the Department of Corrections for the

expenses incurred by their incarceration, amending named Acts." The

bill was eight pages long and addressed only this specific topic.

The Senate passed the bill on April 25, 1995, with no amendments.

     When Senate Bill 721 reached the House of Representatives,

amendments four through sixteen were placed on the bill. These

amendments addressed an array of different subjects, including,

inter alia, expulsion of school students for bringing weapons to

school, increasing the penalties for the possession of cannabis,

and providing for privatization of some services of the State

Appellate Defender's Office. One amendment retitled the bill as "An

Act in relation to crime." With these amendments, Senate Bill 721

passed the House of Representatives and was sent back to the

Senate.

     The Senate and House could not agree as to which of the 13

House amendments to the bill should stand. As a result, a

conference committee was formed. The conference committee changed

the title of the bill and replaced everything after the enacting

clause. What had started out as an eight-page bill became a bill of

over 200 pages. The bill became so voluminous that even the broad

title of "An Act in relation to crime" could not cover all the

subjects contained in the bill. Thus, the committee renamed the

bill "An Act in relation to public safety."

     The bill encompassed a multitude of subject matters, contained

in six articles. Article 1, entitled "The Child Sex Offender

Community Notification Law," created a statewide database for the

purpose of identifying child sex offenders and provided for

community notification of registration of child sex offenders.

Article 1 also amended the Sex Offender Registration Act to change

the definition of "sex offender" and to expand the definition of

"sex offense."

     Article 2 amended the Criminal Code of 1961 to create the

offense of predatory criminal sexual assault of a child. This

article also amended numerous other acts, including the Alcoholism

and Other Drug Abuse and Dependency Act, the Children and Family

Services Act, the Military Code of Illinois, the Metropolitan

Transit Authority Act, the School Code, the Health Care Worker

Background Check Act, and the Illinois Vehicle Code, to include

references to the offense of predatory criminal sexual assault of

a child.

     Article 2 also contained provisions amending the Juvenile

Court Act to allow the prosecution as an adult of juveniles who are

at least 15 years old and who are charged with committing

aggravated vehicular hijacking with a firearm, and juveniles who

are at least 13 years old and who are charged with committing first

degree murder during the course of certain other crimes. In

addition, article 2 amended the Unified Code of Corrections to make

life imprisonment the sentence for a defendant who, while under the

age of 17, murders a person under the age of 12 during the course

of certain other crimes.

     Article 3 created the Environmental Impact Fee Law. Beginning

on January 1, 1996, this law imposed an environmental impact fee of

$60 per 7,500 gallons of fuel sold or used in Illinois to be paid

by the "receiver" of the fuel. The fees collected were to be

deposited in the Underground Storage Tank Fund created by the

Environmental Protection Act and ultimately used to reimburse

eligible owners of underground storage tanks for costs incurred in

remedying contamination caused by leaking tanks. Article 3 also

amended the Civil Administrative Code of Illinois, the Motor Fuel

Tax Law, and the Environmental Protection Act.

     Article 4 amended the Cannabis Control Act to enhance the

felony classifications for the possession and delivery of certain

amounts of cannabis.

     Article 5 amended the Unified Code of Corrections to decrease

the frequency of parole hearings for prison inmates.

     Article 6 amended section 14--3 of the Criminal Code of 1961,

which governs exemptions from the offense of eavesdropping. This

amendment added subsection (j) to section 14--3, providing that the

following activity would be exempt from the offense of

eavesdropping:

               "(j) The use of a monitoring system by any

          corporation or other business entity engaged in the

          provision of products or services to the public, or to

          the officers, employees, or agents thereof, when the acts

          otherwise prohibited herein are for the purpose of

          service quality control or for educational, training, or

          research purposes and such acts are performed with the

          consent of one party to the communication being

          intercepted.

               No communication or conversation or any part,

          portion, or aspect of the communication or conversation

          made, acquired, or obtained, directly or indirectly,

          under this exemption (j), may be, directly or indirectly,

          furnished to any law enforcement officer, agency, or

          official for any purpose or used in any inquiry or

          investigation, or used, directly or indirectly, in any

          administrative, judicial, or other proceeding, or

          divulged to any third party." Pub. Act 89--428 §601, eff.

          December 13, 1995.

     Article 6 also amended the Code of Criminal Procedure of 1963

to provide that a criminal defendant who is receiving psychotropic

drugs is entitled to a fitness hearing only where the court finds

there is a bona fide doubt of the defendant's fitness. This article

also added a new provision to the law governing the admission of

the hearsay statements of child victims.

     In addition, article 6 amended the Unified Code of

Corrections' provision regarding the Truth-in-Sentencing Commission

and rewrote its provision requiring convicted persons committed to

the Department of Corrections to reimburse the Department for the

expenses incurred as a result of their incarceration.

     Public Act 89--428 provided that its provisions would take

effect upon becoming law, except that article 1 would take effect

June 1, 1996, and article 3 would take effect January 1, 1996.

Public Act 89--428 was passed by both the House and the Senate and

was signed into law on December 13, 1995. Shortly thereafter, the

two declaratory judgment actions that are the subject of these

consolidated appeals were instituted.

                             Johnson v. Edgar

     In Johnson v. Edgar, No. 81091, the plaintiffs filed a three-

count complaint for declaratory judgment and injunction in the

circuit court of Cook County on December 15, 1995. The named

plaintiffs were the Illinois State Federation of Labor and Congress

of Industrial Organizations (Illinois AFL-CIO), its president,

Donald Johnson, and its secretary-treasurer, Margaret Blackshere.

The Illinois AFL-CIO is an unincorporated labor organization

representing over 1.2 million Illinois workers employed by private

and municipal corporations and other business entities. The Johnson

complaint named as defendants Governor Jim Edgar, Attorney General

Jim Ryan, and the State of Illinois. The State was dismissed by

agreement of the parties.

     The Johnson plaintiffs' complaint was directed primarily at

the portion of article 6 of Public Act 89--428, which amended

section 14--3 of the Criminal Code to create a new exemption for

the offense of eavesdropping. As stated, this exemption allowed

employers to monitor their employees' conversations in some

circumstances. Count I of the plaintiffs' complaint charged that

Public Act 89--428 violated the single subject rule of the Illinois

Constitution because it contained more than one subject. Count II

charged that the eavesdropping provision in article 6 was so vague

that it violated the plaintiffs' rights to due process of law under

the Illinois and United State Constitutions. Count III charged that

the eavesdropping provision was overbroad and violated privacy

rights in violation of the Illinois and United States

Constitutions. The complaint sought a declaration on the

constitutionality of the provision and an injunction against its

enforcement.

     On January 16, 1996, the plaintiffs filed a motion for summary

judgment. On January 25, 1996, the defendants filed a motion to

dismiss the plaintiffs' complaint, arguing that the plaintiffs had

no standing, the complaint failed to state a claim upon which

injunctive relief could be granted, and the complaint should be

dismissed on the ground of sovereign immunity. On May 7, 1996, the

circuit court granted the plaintiffs' motion for summary judgment

and denied the defendants' motion to dismiss. The circuit court

ruled that the plaintiffs had standing and that Public Act 89--428

was unconstitutional in its entirety because it encompassed more

than one subject, in violation of article IV, section 8(d), of the

Illinois Constitution. The court permanently enjoined the

defendants from enforcing any provision of Public Act 89--428. The

defendants appealed directly to this court, pursuant to Supreme

Court Rule 302(a) (134 Ill. 2d R. 302(a)), from the declaration

that Public Act 89--428 is unconstitutional. The defendants have

not appealed the circuit court's ruling on the standing issue.

                               Langa v. Gade

     In Langa v. Gade, No. 81249, the plaintiff, Irv Langa,

individually and d/b/a Langa Air, Inc. (Langa), initiated his

declaratory judgment and injunction action in the circuit court of

Madison County on January 3, 1996. Langa filed his two-count,

first-amended complaint on March 6, 1996, naming as defendants the

Illinois Environmental Protection Agency, State Comptroller Loleta

Didrickson, State Treasurer Judy Baar Topinka, and Director of

Revenue Ken Zehnder.

     Langa's complaint was directed primarily at article 3 of

Public Act 89--428. As stated, article 3 created the Environmental

Impact Fee Law. Langa's complaint alleged that he owned and

operated Langa Air, Inc., in the course of which he buys aviation

fuel from "receivers" that are required to pay the environmental

impact fee imposed by article 3. Langa claimed to be adversely

affected by the additional costs imposed on receivers by article 3.

Count I of Langa's first-amended complaint charged that Public Act

89--428, in its entirety, was unconstitutional because it violated

the single subject rule of the Illinois Constitution. In count II,

Langa alleged that article 3 violated the constitutional guarantee

of equal protection because it exempted certain airports from

paying the fee.

     The defendants filed a motion to dismiss Langa's complaint on

April 17, 1996. The defendants argued that Langa did not have

standing because he was not a "receiver" subject to the fee and

further argued that Public Act 89--428 did not violate either the

single subject rule or the guarantee of equal protection. On May 2,

1996, Langa filed a motion for summary judgment. The Cook County

circuit court's decision in Johnson v. Edgar, declaring Public Act

89--428 unconstitutional, was handed down on May 7, 1996. The

Madison County circuit court in Langa v. Gade was apprised of the

Johnson decision. On May 24, 1996, the defendants filed a second

motion to dismiss Langa's complaint based on the May 22, 1996,

enactment of a separate Environmental Impact Fee Law in Public Act

89--457. The defendants argued that, as a result of Public Act 89--

457, Langa's constitutional challenge to Public Act 89--428 was

moot and his complaint should be dismissed.

     The circuit court issued an order on June 3, 1996, granting

Langa's motion for summary judgment and denying the defendants'

motions to dismiss. The court ruled that Langa had standing to

bring this action, his challenge to Public Act 89--428 was not

moot, and Public Act 89--428 violated the single subject rule of

the Illinois Constitution. The court permanently enjoined the

defendants from enforcing any provision of Public Act 89--428. The

defendants appealed directly to this court pursuant to Rule 302(a).

The defendants have not appealed the circuit court's ruling on the

standing issue.

                          Subsequent Legislation

     Questions are raised in these appeals with regard to the

effect of subsequent legislation passed by the Illinois

legislature. We briefly discuss that legislation. Following the

circuit court of Cook County's decision in Johnson, the General

Assembly began revisiting different portions of Public Act 89--428

in separate pieces of legislation. Public Act 89--457, mentioned

above, was enacted on May 22, 1996. Public Act 89--457 recodified

the Environmental Impact Fee Law that was contained in article 3 of

Public Act 89--428. Public Act 89--457, like Public Act 89--428,

imposed the fee to begin on January 1, 1996. Public Act 89--457

also contained a provision validating all actions taken in reliance

on article 3 of Public Act 89--428.

     Public Act 89--452 was enacted on May 17, 1996. Public Act 89-

-452 contained an exemption from the offense of eavesdropping for

employers similar to that contained in article 6 of Public Act 89--

428. The exemption established by Public Act 89--452, however, was

more limited than that contained in Public Act 89--428 and

contained far more details concerning its application.

     On May 29, 1996, the General Assembly enacted Public Act 89--

462, which created the Child Sex Offender and Murderer Community

Notification Law. That law is substantially similar to the Child

Sex Offender Community Notification Law created by article 1 of

Public Act 89--428. Public Act 89--462 also recodified the

provisions of article 2 of Public Act 89--428.

     Public Act 89--689 was enacted on December 31, 1996. That Act

addressed three provisions that had been contained in Public Act

89--428: (1) the timing of parole hearings, formerly addressed in

article 5; (2) the Truth-in-Sentencing Commission, formerly

addressed in article 6; and (3) fitness hearings for criminal

defendants receiving psychotropic drugs, formerly addressed in

article 6.

     Several provisions of Public Act 89--428 have not been

addressed in subsequent legislation. Those provisions include the

enhanced felony classifications for possession and delivery of

cannabis contained in article 4, the addition to the child hearsay

exception contained in article 6, and the provision regarding

prisoners' reimbursement for incarceration expenses contained in

article 6.

                                 ANALYSIS

     We consolidated the defendants' direct appeals in each case

for our consideration. The defendants in each case have filed one

joint brief. We therefore refer to all the defendants collectively

as "the defendants," without differentiating between the two cases.

Only the plaintiffs in Johnson have filed an appellees' brief. We

therefore refer to the Johnson plaintiffs as "the plaintiffs."

                                 Mootness

     The defendants first urge this court not to reach the

substantive issue of whether Public Act 89--428 is

unconstitutional. They contend that the subsequent reenactment of

many of the provisions of Public Act 89--428 renders the

plaintiffs' constitutional challenge to the Act moot. The

defendants therefore ask that we vacate the circuit court decisions

and lift the injunctions. We do not agree that the mootness

doctrine applies in this case.

     A matter is moot when the issues involved in the trial court

no longer exist because intervening events have rendered it

impossible for the reviewing court to grant the complaining party

effectual relief. In re A Minor, 127 Ill. 2d 247, 255 (1989). As

the defendants point out, this court has held that where a

challenged statute is amended while the cause is pending, the

question of the statute's validity becomes moot. Forest Preserve

District v. City of Aurora, 151 Ill. 2d 90, 94 (1992); People v.

B.D.A., 102 Ill. 2d 229, 233 (1984). Thus, in those cases where,

during the pendency of the case, an amendment removed or altered

the potentially unconstitutional language or aspect of a challenged

statute, we have held that the constitutional challenge to the

statute is moot. See Forest Preserve District, 151 Ill. 2d at 94-

95; Arrington v. City of Chicago, 45 Ill. 2d 316 (1970). For

example, in Forest Preserve District, the plaintiff challenged an

amendment that added certain language to a provision of the

Downstate Forest Preserve District Act. The plaintiff contended

that the added language rendered the provision unconstitutional

special legislation and violative of equal protection guarantees.

The trial court agreed and declared the provision unconstitutional.

During the pendency of the defendant's direct appeal, the

legislature amended the provision to effectively nullify the

language which had been held unconstitutional. Under these

circumstances, this court determined that the case was moot. Forest

Preserve District, 151 Ill. 2d at 94-95.

     This rule is not applicable in this case. The constitutional

challenge pursued here is that Public Act 89--428 was enacted in

violation of the single subject rule of the Illinois Constitution.

As we discuss in detail later in this opinion, the single subject

rule prohibits the enactment of bills that encompass more than one

subject. Thus, a challenge that an act violates the single subject

rule is, by definition, directed at the act in its entirety. There

is no one provision or feature of the act that is challenged as

unconstitutional, such that the defect could be remedied by a

subsequent amendment which simply deleted or altered that provision

or feature. In fact, a single subject challenge does not address

the substantive constitutionality of the act's provisions at all.

Rather, a single subject challenge goes to the very structure of

the act, and the process by which it was enacted. If we determine

that Public Act 89--428 in its structure is invalid, the Act may

not be permitted to stand. The legislature is, of course, free to

revisit the provisions contained in the Act in other legislation.

Subsequent legislation, however, will not remedy the constitutional

defect in Public Act 89--428 if it was passed in violation of the

single subject rule.

     Moreover, we note that Public Act 89--428 has not been

replaced in its entirety. Some provisions of Public Act 89--428

have not been revisited in separate legislation. Because a single

subject violation would render invalid each and every provision of

Public Act 89--428, the fact that some provisions of Public Act 89-

-428 have not been readdressed also defeats the defendants'

mootness argument. Further, with regard to those provisions of

Public Act 89--428 that have been reenacted in some form, in most

instances, the effective dates of the new legislation postdate the

effective date of the corresponding provision in Public Act 89--

428. Thus, a window of time exists when the allegedly invalid

provisions of Public Act 89--428 were in effect and had not been

superseded by subsequent legislation.

     Even if we were to find the mootness doctrine technically

applicable here, the public interest exception to that doctrine

would save the constitutional issue for our review. Both the

plaintiffs, in their appellees' brief, and the defendants, in their

response to a motion filed by the plaintiffs, have argued that the

issue of the validity of Public Act 89--428 satisfies the

requirements for the public interest exception. The criteria for

the public interest exception are: (1) the public nature of the

question, (2) the desirability of an authoritative determination

for the purpose of guiding public officers, and (3) the likelihood

that the question will generally recur. In re A Minor, 127 Ill. 2d

247, 257 (1989). We agree with the parties that the constitutional

issue in this case falls within the public interest exception. The

issue of whether the legislature enacted this broad-sweeping

legislation in a manner that violates our constitution is a matter

of public importance. Further, the issue of whether Public Act 89--

428 violated the single subject rule is likely to recur. The record

indicates that the issue has been raised in at least one other case

currently pending at the trial level. Moreover, the single subject

issue will likely recur with respect to the provisions of Public

Act 89--428 that have not been reenacted in other legislation.

Consequently, resolution of the single subject challenge by this

court will be of assistance to both the lower courts and the public

officers who will be faced with questions regarding the validity of

the Act's many provisions. In short, this court's ruling will

remove the uncertainty surrounding the Act and its continued

validity.

     We note that a motion by the Johnson plaintiffs to dismiss the

appeal, on the ground that there is no longer a controversy as to

the eavesdropping provision because it was replaced by new

legislation, was taken with the case. The defendants filed

objections to dismissal of the appeal, and continue to object to

dismissal in their appellants' brief. Given our holding that the

mootness doctrine does not apply here, we deny the Johnson

plaintiffs' motion.

     We therefore turn to the substantive issue of the

constitutionality of Public Act 89--428.

                            Single Subject Rule

     We must decide whether the legislature, in enacting Public Act

89--428, violated the single subject rule of the Illinois

Constitution. Article IV, section 8(d), of the Illinois

Constitution of 1970 provides, in pertinent part, as follows:

               "Bills, except bills for appropriations and for the

          codification, revision or rearrangement of laws, shall be

          confined to one subject." Ill. Const. 1970, art. IV,

          §8(d).

     The single subject rule is a substantive requirement for the

passage of bills and is therefore subject to judicial review.

People v. Dunigan, 165 Ill. 2d 235, 254 (1995). This court

discussed the historical purpose of the single subject rule in

Fuehrmeyer v. City of Chicago, 57 Ill. 2d 193, 201 (1974), stating:

          " `The history and purpose of this constitutional

          provision are too well understood to require any

          elucidation at our hands. The practice of bringing

          together into one bill subjects diverse in their nature,

          and having no necessary connection, with a view to

          combine in their favor the advocates of all, and thus

          secure the passage of several measures, no one of which

          could succeed upon its own merits, [is] one both

          corruptive of the legislator and dangerous to the

          State.' " Fuehrmeyer, 57 Ill. 2d at 202, quoting People

          ex rel. Drake v. Mahaney, 13 Mich. 481, 494-95 (1865).

Thus, one reason for the single subject rule is to prevent

legislation from being passed which, standing alone, could not

muster the necessary votes for passage. Geja's Cafe v. Metropolitan

Pier & Exposition Authority, 153 Ill. 2d 239, 258 (1992). The rule

also serves to facilitate orderly legislative procedure. "By

limiting each bill to a single subject, the issues presented by

each bill can be better grasped and more intelligently discussed."

M. Rudd, No Law Shall Embrace More Than One Subject, 42 Minn. L.

Rev. 389, 391 (1958). In sum, the single subject rule ensures that

the legislature addresses the difficult decisions it faces directly

and subject to public scrutiny, rather than passing unpopular

measures on the backs of popular ones.

     The term "subject," in this context, is to be liberally

construed and the subject may be as broad as the legislature

chooses. Dunigan, 165 Ill. 2d at 255; Cutinello v. Whitley, 161

Ill. 2d 409, 423-24 (1994). Nonetheless, the matters included in

the enactment must have a natural and logical connection.

Cutinello, 161 Ill. 2d at 423-24; People ex rel. Ogilvie v. Lewis,

49 Ill. 2d 476, 487 (1971). The rule prohibits the inclusion of

" `discordant provisions that by no fair intendment can be

considered as having any legitimate relation to each other.' "

Ogilvie, 49 Ill. 2d at 487, quoting People ex rel. Gutknecht v.

City of Chicago, 414 Ill. 600, 607-08 (1953).

     As the above principles elucidate, the single subject rule

does not impose an onerous restriction on the legislature's

actions. Rather, the rule leaves the legislature with wide latitude

in determining the content of bills. In fact, this court has on

numerous occasions rejected single subject challenges brought

against various pieces of legislation. See, e.g., Cutinello, 161

Ill. 2d at 423-24 (all provisions of challenged act pertained to

the subject of transportation); Geja's Cafe, 153 Ill. 2d at 257-59

(all provisions of challenged act pertained to the McCormick Place

Expansion Project); Stein v. Howlett, 52 Ill. 2d 570, 582-83 (1972)

(all provisions of challenged act related to the subject of

ethics); Ogilvie, 49 Ill. 2d at 487-88 (all provisions of

challenged legislation pertained to the subject of transportation

bonds). These decisions demonstrate not only the principles which

we apply in evaluating a single subject challenge, but also that

the legislature must indeed go very far to cross the line to a

violation of the single subject rule. In enacting Public Act 89--

428, the legislature clearly crossed that line. No matter how

liberally the single subject rule is construed, Public Act 89--428

violates that rule.

     Public Act 89--428 began its legislative life as an eight-page

bill addressing the narrow subject of reimbursement by prisoners to

the Department of Corrections for the expense of incarceration. As

enacted on December 13, 1995, however, Public Act 89--428 had

experienced an extraordinary growth, from 8 pages to over 200

pages. While the length of a bill is not determinative of its

compliance with the single subject rule, the variety of its

contents certainly is. Here, "An Act in relation to prisoner's

reimbursement to the Department of Corrections for the expenses

incurred by their incarceration" became a bill which created a law

providing for the community notification of child sex offenders,

created a law imposing fees on the sale of fuel, and enhanced the

felony classifications for the possession and delivery of cannabis.

This bill also created an exemption from prosecution for

eavesdropping applicable to employers who wish to monitor their

employees' conversations, amended the law to allow the prosecution

of juveniles as adults in certain cases, and created the new crime

of predatory criminal sexual assault of a child. This bill further

changed the law governing the timing of parole hearings for prison

inmates, changed the law governing when a defendant who is

receiving psychotropic drugs is entitled to a fitness hearing, and

added a provision to the law governing child hearsay statements.

Finally, Public Act 89--428 addressed the subject of prisoners'

reimbursement to the Department of Corrections for the expenses of

their incarceration. In sum, Public Act 89--428 amended a multitude

of provisions in over 20 different acts, and created several new

laws. By no fair intendment may the many discordant provisions in

Public Act 89--428 be considered to possess a natural and logical

connection. See Ogilvie, 49 Ill. 2d at 487. The enactment of Public

Act 89--428 therefore violated the single subject rule.

     This court has previously invalidated a statute that violated

the single subject rule. At issue in Fuehrmeyer v. City of Chicago,

57 Ill. 2d 193 (1974), was the constitutionality of Public Act 77--

1818. That act purported to grant exclusively to the state, and to

take away from units of local government, the power to regulate the

professions and occupations listed in 30 separate acts, ranging

from architects to funeral directors to water well contractors.

This court first rejected the contention that the act was for

"codification, revision or rearrangement" and was therefore exempt

from the single subject rule. Fuehrmeyer, 57 Ill. 2d at 202. This

court went on to find that the act violated the single subject rule

because each of the 30 regulated professions or occupations was a

separate subject. Fuehrmeyer, 57 Ill. 2d at 203-05.

     The Act at issue in this case presents an even more egregious

example of the legislature ignoring the single subject rule. As

noted above, Public Act 89--428 encompassed subjects as diverse as

child sex offenders, employer eavesdropping, and environmental

impact fees imposed on the sale of fuel. Under no interpretation of

the single subject rule could it reasonably be concluded that

Public Act 89--428 was passed in accordance with that rule.

     The defendants argue that the Act is constitutional because

all of its provisions are confined to the single subject of public

safety. We cannot accept the defendants' contention. Were we to

conclude that the many obviously discordant provisions contained in

Public Act 89--428 are nonetheless related because of a tortured

connection to a vague notion of public safety, we would be

essentially eliminating the single subject rule as a meaningful

constitutional check on the legislature's actions.

     For the reasons stated, we hold that Public Act 89--428 was

enacted in violation of the single subject rule of our state

constitution and is therefore invalid.

                          Validating Legislation

     The defendants make an additional argument solely with respect

to the lower courts' injunctions against the enforcement of the

environmental impact fee law of Public Act 89--428. The defendants

ask that we lift the injunctions against enforcement of this

provision on the ground that the reenactment of the environmental

impact fee law in Public Act 89--457 validated the imposition of

the fees under Public Act 89--428. We agree that application of

Public Act 89--457 requires that the injunctions be lifted to the

extent that those injunctions proscribe the use, pursuant to Public

Act 89--457, of environmental impact fees already collected under

Public Act 89--428.

     This court has recognized the legislature's power to pass

curative legislation. See Bates v. Board of Education, Allendale

Community Consolidated School District No. 17, 136 Ill. 2d 260, 268

(1990). The general rule is that the legislature "may by a curative

act validate any proceeding which it might have authorized in

advance, provided the power be so exercised as not to infringe on

or divest property rights and vested interests of the parties

involved." Bates, 136 Ill. 2d at 268; see also Worley v. Idleman,

285 Ill. 214, 219 (1918). The test is whether the legislature might

have authorized the act which it attempts to validate before it

took place. People ex rel. Shore v. Helmer, 410 Ill. 420, 427

(1951).

     Generally, where the legislature changes the law while an

appeal is pending, the case must be disposed of by the reviewing

court under the law as it then exists, not as it was when the

decision was made by the lower court. Envirite Corp. v. Illinois

Environmental Protection Agency, 158 Ill. 2d 210, 215 (1994).

Accordingly, the fact that curative legislation is enacted during

the pendency of an appeal does not preclude its application by the

reviewing court. See Bates, 136 Ill. 2d at 264; People ex rel.

Bauer v. Elmhurst-Villa Park-Lombard Water Comm'n, 20 Ill. 2d 139,

142 (1960); People ex rel. Patterson v. Woodruff, 280 Ill. 472, 475

(1917). In Bates, the plaintiffs challenged the defendant school

district's issuance of bonds carrying an interest rate of 9.75%.

The plaintiffs charged that the bonds were invalid because the

applicable provision of the School Code set an interest rate

ceiling of 7%. The defendant contended that the bonds were valid

because the applicable provision of the Bond Authorization Act

authorized an interest rate of 9.75%. The circuit court dismissed

the plaintiffs' claim and the appellate court reversed. While the

defendant's appeal was pending before this court, the legislature

enacted new legislation that, inter alia, validated bonds which

exceeded the authority granted by the provision under which they

were issued, but were within the authority granted by the Bond

Authorization Act. This court held that this legislation validated

the bonds challenged by the plaintiffs. In so holding, this court

noted that, at the time the bonds were issued, the legislature

possessed the authority to authorize an interest rate above 7%.

Therefore, because the legislature could have originally authorized

the higher rate, it could validate the rate after the fact by means

of curative legislation. Bates, 136 Ill. 2d at 267-68.

     Similarly, in Woodruff, the plaintiffs brought a quo warranto

action against a school district and its members charging that the

district was organized pursuant to a statute which had been held

unconstitutional by this court. While the case was pending before

this court, the General Assembly enacted legislation that validated

school districts, including the one challenged by the plaintiffs,

which met certain requirements. This court determined that, because

the legislature had the power to create the school districts in the

first instance, the legislature could, by curative act, validate

districts which had been organized under the unconstitutional act.

Woodruff, 280 Ill. at 475-77; see also Bauer, 20 Ill. 2d at 142-44

(curative legislation enacted during pendency of appeal acted to

validate water commission whose establishment had been challenged

by the plaintiffs).

     Curative legislation has been held effective to validate tax

levies which, when made, did not comply with statutory

requirements. See Schlenz v. Castle, 84 Ill. 2d 196 (1981); People

v. Holmstrom, 8 Ill. 2d 401 (1956). In Schlenz, the plaintiffs

challenged tax levies made by the defendants on the ground that

they failed to publish the real estate assessment lists within the

time frames set by section 103 of the Revenue Act. This court had

previously held that the publication dates of section 103 were

mandatory. While the plaintiffs' action was pending in the circuit

court, the legislature enacted legislation that validated

assessments that had not been timely published under section 103.

This court held that, because there was no lack of power to make

the assessments in the first instance, the subsequent legislation

acted to validate the challenged assessments. Schlenz, 84 Ill. 2d

at 204-09.

     In this case, the injunctions issued by the lower courts had

the effect of prohibiting the defendants from collecting or

disbursing environmental impact fees under Public Act 89--428.

Prior to May 7, 1996, the date the first injunction was issued in

Johnson, fees had already been collected under that law. According

to the defendants, the injunctions issued in each of these cases

prohibit the defendants from disbursing, in accordance with the

terms of the statute, any of these collected fees to reimburse

underground tank owners for corrective action. The defendants argue

that Public Act 89--457 validated all fees collected and actions

taken pursuant to the environmental impact fee law of Public Act

89--428. As a result, the defendants maintain, this court should

lift the injunctions to the extent that they prohibit the

disbursement of fees already collected under Public Act 89--428.

For the reasons stated below, we agree.

     As noted, Public Act 89--457 recodified the environmental

impact fee law contained in article 3 of Public Act 89--428. Public

Act 89--457, like Public Act 89--428, imposed the fee beginning

January 1, 1996. Public Act 89--457 also stated that the fee

imposed under that law replaced the fee imposed under Public Act

89--428 and that fees paid under Public Act 89--428 shall satisfy

the receiver's corresponding liability under Public Act 89--457. In

addition, Public Act 89--457 contained the following provision:

               "Validation. All actions taken in reliance on or

          pursuant to Article 3 of Public Act 89--428 by the

          Department of Revenue, the Environmental Protection

          Agency, the Pollution Control Board, or any other person

          or entity are hereby validated." Pub. Act 89--457, §385.

     Public Act 89--457 thus expressly states the legislature's

intention to validate fees collected and other actions taken under

article 3 of Public Act 89--428. There is no contention made here

that the legislature did not possess the authority, in the first

instance, to impose the environmental impact fee. The defect we

identified in Public Act 89--428 was in the structure of the Act,

not in its substantive provisions. No argument has been made to

this court that the environmental impact fee law of Public Act 89--

428 is substantively invalid. Curative legislation is properly used

to validate an irregular or defective exercise of authority. See

Bates, 136 Ill. 2d at 270. Consequently, because there is no

contention that the legislature lacked the authority to impose the

fees before the fact, the legislature could, by curative

legislation, validate the fees already collected under the invalid

act. See Bauer, 20 Ill. 2d at 144.

     We note that no argument has been advanced here that the

application of Public Act 89--457 to validate the fees collected

under Public Act 89--428 interferes with vested rights or is

otherwise unconstitutional. In fact, the party who would have been

most interested in pursuing such an argument, the plaintiff in

Langa, has declined to file a brief in this court. The Johnson

plaintiffs, in their brief, have stated that they "take no position

as to the collection of fees under the Environmental Impact Fee

Act." Legislative enactments are, of course, presumed to be

constitutional. Bernier v. Burris, 113 Ill. 2d 219, 227 (1986).

Consequently, because we determine that Public Act 89--457 meets

the test for curative legislation and because no party in this case

has challenged the constitutionality of applying it as curative

legislation, we find that Public Act 89--457 applies to validate

the fees collected under the environmental impact fee law of Public

Act 89--428. The lower courts' injunctions in these cases should

therefore be lifted to the extent that they proscribe the use of

fees already collected under Public Act 89--428. We caution,

however, that by this holding we have not decided any issues

regarding the constitutionality of Public Act 89--457, as no such

constitutional challenge has been raised before us.

     This holding does not impact our decision above that Public

Act 89--428, in its entirety, is unconstitutional and

unenforceable. As the defendants concede, curative legislation may

validate only actions taken in reliance on an unconstitutional

statute. Curative legislation cannot validate or legalize the

unconstitutional legislation itself. See People ex rel. Patterson

v. Woodruff, 280 Ill. 472, 476 (1917).

                                CONCLUSION

     For the foregoing reasons, we affirm the judgment of the

circuit court of Cook County in cause No. 81019, declaring Public

Act 89--428 unconstitutional and enjoining its enforcement, except

that we vacate that portion of the injunction which prohibits the

use, pursuant to Public Act 89--457, of environmental impact fees

already collected under Public Act 89--428. We likewise affirm the

judgment of the circuit court of Madison County in cause No. 81249,

declaring Public Act 89--428 unconstitutional and enjoining its

enforcement, except that we vacate that portion of the injunction

which prohibits the use, pursuant to Public Act 89--457, of

environmental impact fees already collected under Public Act 89--

428.

Judgments affirmed, as modified.