CERES ONE CORPORATION *et al.*, Objectors-Appellees, v. THE NAPERVILLE TOWNSHIP ROAD DISTRICT, Intervenor-Appellant.

Second District    No. 2—02—1250

Opinion filed September 30, 2003.

Richard J. Tarulis and Eric L. Walberg, both of Brooks, Adams & Tarulis, of Naperville, for appellant.

James A. Geraghty, of Wheaton, for appellee Ceres One Corporation.

JUSTICE O'MALLEY delivered the opinion of the court:

Ceres One Corporation and others (objectors) filed tax objections in the circuit court of Du Page County challenging the 1996 tax levy of the Naperville Township Road District (District). Objectors brought nine objections labeled (A) through (I). The trial court granted objectors' motion for summary judgment on objection (H), which challenged the portion of the 1996 levy designated for the "permanent road fund." The District appeals, and we affirm.

In 1996, the District levied a general tax at a rate of $.01072 on every $100 of assessed valuation. Part of this general tax was specifically designated for the "permanent road fund" and was purportedly authorized by a special hard road tax levy that was approved by the

District in 1979 and authorized an annual tax for road improvements. The record shows that a levy for a special hard road tax indeed was approved by referendum in the District on April 10, 1979, pursuant to the provisions of the Illinois Highway Code (Code) (Ill. Rev. Stat. 1977, ch. 121, par. 1—101 *et seq.*).

■ Objectors argued before the trial court that the 1979 levy was invalid, and so, by extension, was the 1996 road tax. On objectors' motion for summary judgment, the trial court found several of the objections meritorious and declared the 1996 road tax invalid. In their appellees' brief, objectors raise an argument not brought before the trial court, *viz.*, that the 1979 levy expired by force of law five years after it was approved, and thus the 1996 tax was *ultra vires*. In light of the fact that the five-year limitation was repealed shortly after the 1979 tax levy was approved, we directed the parties to address the specific question of whether the repeal applied retrospectively to the 1979 levy so as to eliminate the need to renew the levy after five years. In its supplemental brief, the District claims that objectors' new argument is waived because it was not raised in the trial court. Nonetheless, we may affirm the judgment of the trial court on any ground appearing in the record, regardless of whether that ground was relied upon by the trial court or whether its reasoning was correct. *Hawkes v. Casino Queen, Inc.*, 336 Ill. App. 3d 994, 1005 (2003). We hold that, because the 1979 hard road tax levy expired five years after it was passed and the District never renewed it, the 1996 road tax was *ultra vires*.

At the time the 1979 levy was approved, section 6—601 of the Code (Ill. Rev. Stat. 1977, ch. 121, par. 6—601) provided:

"On the petition of 25 legal voters of any road district to the district clerk he shall, when giving notice of the time and place for holding the next annual town meeting or road district election, also give notice that a vote will be taken at such election or meeting for or against an annual tax not to exceed .167% of the value of the taxable property, as equalized or assessed by the Department of Local Government Affairs, for the purpose of constructing or maintaining gravel, rock, macadam or other hard roads, or for improving, maintaining or repairing earth roads by draining, grading, oil treating or dragging. Such petition shall state the location and route of the proposed road or roads, and shall also state the annual rate per cent not exceeding .167% of the value, as equalized or assessed by the Department of Local Government Affairs, *and the number of years not exceeding 5 for which such tax shall be levied.*" (Emphasis added.)

Section 6—602 of the Code provided:

"If a majority of all the ballots cast at such election on such proposition are in favor of such special tax, then the township

board of auditors or highway board of auditors, as the case may be, or the highway commissioner in a county not under township organization of the road district shall levy an annual tax in accordance with such vote and certify the same to the county clerk. \*\*\* *The length of time for which the special tax may continue however, may not exceed 5 years.*" (Emphasis added.) Ill. Rev. Stat. 1977, ch. 121, par. 6—602.

Within five years after the 1979 special hard road tax levy was approved, the legislature adopted Public Acts 81—779 and 81—821, both effective January 1, 1980. Public Act 81—779, which was approved on September 16, 1979, deleted the above italicized language from sections 6—601 and 6—602, thus removing the five-year limitation. See Ill. Rev. Stat. 1979, ch. 121, pars. 6—601, 6—602. Public Act 81—779 also added section 6—602.1 (Ill. Rev. Stat. 1979, ch. 121, par. 6—602.1), which stated in relevant part:

"Any Road District voting after April 3, 1979 to levy a special tax for most purposes under the provisions of this Section shall establish such annual tax on a permanent basis unless on the Petition of 25 legal voters of any Road District to the District Clerk."

Public Act 81—821, approved three days after Public Act 81—779 on September 19, 1979, amended section 6—602 to clarify that, once passed, a special hard road tax levy remains in effect until repealed by the road district. See Ill. Rev. Stat. 1979, ch. 121, par. 6—602 ("Such special tax shall remain in effect until repealed by the legal voters of the road district as provided in Section 6—617 of the Code [(Ill. Rev. Stat. 1979, ch. 121, par. 6—617)]"). Public Act 81—821 also added section 6—617, which stated in relevant part:

"To repeal the special tax, once levied, 25 legal voters of the road district shall petition the district clerk. Such petition shall contain a request for an election. The district clerk shall then, when giving notice of the time and place for holding the next road district election, also give notice that a vote will be taken at such election for or against the repeal of the annual tax \*\*\*." Ill. Rev. Stat. 1979, ch. 121, par. 6—617.

Some months later, on September 26, 1980, Public Act 81—1509 was approved and made effective. Public Act 81—1509 eliminated section 6—602.1.

It is undisputed that the District never renewed the 1979 levy prior to imposing the 1996 tax.

■ Applying the retroactivity analysis set forth in *Landgraf v. USI Film Products*, 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994), and adopted by our supreme court in *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27 (2001), we hold that the elimination of the five-year limitation in Public Acts 81—779 and 81—821 did

not apply retrospectively to eliminate the need to renew the 1979 tax levy after five years. Under the *Landgraf* analysis, the first question is whether the legislature has clearly indicated the temporal reach of the amended statute. *Commonwealth Edison*, 196 Ill. 2d at 38. If so, then, absent a constitutional prohibition, that expression of legislative intent must be given effect. *Commonwealth Edison*, 196 Ill. 2d at 38. If not, then the court must determine whether applying the statute to past events would have a retroactive impact, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. *Commonwealth Edison*, 196 Ill. 2d at 38. If there would be no retrospective impact, then the amended law may be applied to past events. *Commonwealth Edison*, 196 Ill. 2d at 38. If, however, applying the amended law to past events would have a retrospective impact, then the court must presume that the legislature did not intend that it be so applied. *Commonwealth Edison*, 196 Ill. 2d at 38.

■ We begin the *Landgraf* analysis by inquiring whether Public Acts 81—779 and 81—821, which struck the five-year limitation on special hard road tax levies, indicated the statute's temporal reach. Public Act 81—779 repealed the five-year limitation in sections 6—601 and 6—602 and also added section 6—602.1, which provided that any special hard road tax levy approved after April 3, 1979, would remain in effect until repealed by referendum. Public Act 81—821, approved several days later, added section 6—617, which provided generally that, once levied, a special hard road tax levy would remain in effect until repealed by referendum. Thus, the amendments had prospective as well as limited retrospective effect. Construing sections 6—602.1 and 6—617 together, we can ascertain the temporal scope of the amendments repealing the five-year limitation on special hard road tax levies: the repeal applied not only prospectively to levies approved after January 1, 1980 (the effective date of the amendments), but also retrospectively to levies approved between April 3, 1979, and January 1, 1980. *Landgraf* compels us to give effect to the temporal scope of a repeal if there is no constitutional bar. Neither party cites one. Thus, had the amendments remained unaltered, the District's 1979 levy, having been passed after April 3, 1979, would have fallen under the retrospective scope of section 6—602.1 and hence remained in effect until repealed by referendum.

Public Act 81—1509, however, altered the scheme by repealing section 6—602.1 and with it the express provision that the elimination of the five-year limitation applied retrospectively to all special hard road tax levies approved after April 3, 1979. However, the repeal left

intact section 6—617, thus retaining the prospective effect of the amendments. From this we can infer the temporal scope of this partial restoration of the five-year limitation: special hard road tax levies approved between April 3, 1979, and January 1, 1980 (the effective date of Public Acts 81—779 and 81—821), are again subject to the five-year limitation, but levies approved after January 1, 1980, remain in effect until repealed by referendum. *Landgraf* compels us to honor the temporal scope of a repeal if there is no constitutional bar. Neither party points to any such bar. Accordingly, we view the repeal of section 6—602.1 as again subjecting the District's April 10, 1979, special hard road tax levy to the five-year limitation. As the 1979 levy lapsed five years after it was approved and was never renewed, the 1996 levy (which the District based on the 1979 levy) was *ultra vires*.

The District suggests that, even if we resolve the *Landgraf* issue against it, we should still uphold the 1996 tax because the District relied on the repeal of the five-year limitation to its detriment in failing to renew the 1979 levy. The sole authority the District cites for this reliance claim is the supreme court's holding in *Commonwealth Edison*, 196 Ill. 2d at 42, that Will County's property tax levy, which was imposed before the effective date of the statute relied upon, was valid because the statute unequivocally provided that levies adopted before its effective date were valid. We appreciate that in this case, too, the government relies on a statutory provision, section 6—601.2, that expressly governs events occurring before its effective date. However, section 6—601.2, unlike the statute in *Commonwealth Edison*, was repealed and with it the retrospective effect. Thus, the District lacks specific statutory authority for its suggestion that the 1979 levy was not governed by the five-year limitation. The District is left, then, with the claim that it relied on the rescission of the five-year limitation to its detriment. *Commonwealth Edison*, however, said nothing about reliance claims. Therefore, because the District has supplied no relevant authority for its reliance argument, we reject it.

The special concurrence agrees with our analysis but suggests that, even if the legislature had expressly indicated that the repeal of the five-year limitation extended back to the 1979 levy, we could not apply the law as written because it would have a retroactive impact. The special concurrence appears to assume that retroactivity is an absolute bar to the retrospective application of a statute even if the legislature has indicated its temporal scope. Under *Landgraf*, however, a statute whose temporal scope is indicated must be applied as written "absent a constitutional prohibition." *Commonwealth Edison*, 196 Ill. 2d at 38. A retroactive tax measure is unconstitutional only when its

effect is peculiarly "harsh and oppressive." *Commonwealth Edison*, 196 Ill. 2d at 43.

Based on the foregoing, we conclude that, because the District's 1979 special hard road tax levy expired five years after it was approved and the District never renewed the levy, the 1996 road tax was *ultra vires* and therefore invalid. Because our resolution of this issue disposes of this appeal, we do not address the remaining arguments against the 1996 tax.

For reasons stated above, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

BYRNE, J., concurs.

JUSTICE McLAREN, specially concurring.

I agree with all that is stated in the majority opinion. I believe that there are additional bases to affirm the trial court that are not declared in the majority opinion. The majority states: "If not, then the court must determine whether applying the statute to past events would have a retroactive impact, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. *Commonwealth Edison*, 196 Ill. 2d at 38. If there would be no retrospective impact, then the amended law may be applied to past events." 343 Ill. App. 3d at 386.

I believe the amendatory language would have a retroactive impact because it would increase the liability of taxpayers to pay the tax in question past the five-year limitation that was in effect at the time of the referendum. I also believe that the amendatory language would impose new duties on taxpayers because the effect of the amendment would place a new duty upon at least 25 taxpayers to institute a referendum to terminate the tax in question, which they were not required to do prior to the passage of the amendatory legislation. Therefore, assuming *arguendo* that the statute was intended by the legislature to be retrospective, I believe the amendatory language should not be given retrospective effect under the circumstances of this case for the additional bases set forth above.