Docket Nos. 100682, 100730 cons.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

ALLEGIS REALTY INVESTORS *et al.*, Appellees, v. JOHN LOTUS NOVAK, County Treasurer and *ex-officio* County Collector of Du Page County, *et al.*, Appellants.

*Opinion filed September 21, 2006.*

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Kilbride, and Garman concurred in the judgment and opinion.

Justice Burke took no part in the decision.

## OPINION

Plaintiffs, Allegis Realty Investors and other taxpayers from Du Page County, filed objections under section 23–10 of the Property Tax Code (35 ILCS 200/23–10 (West 1998)) to various taxes imposed in 1997 by several units of local government. Among the taxes challenged, and the only one at issue in this case, was the 1997 permanent road (hard-road) tax levied by Naperville Township Road District (the Road District). The Road District intervened in the case and moved for summary judgment. Its motion was granted, and the challenge to its 1997 hard-road tax levy was rejected.

Plaintiffs subsequently brought an interlocutory appeal pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). The appellate court reversed and remanded, concluding that there was a genuine issue of fact, precluding summary judgment, with respect to whether the statutory requirements for the tax levy had been satisfied. 356 Ill. App. 3d 887. The Du Page County treasurer and the Road District filed separate petitions with our court seeking leave to appeal. 177 Ill. 2d R. 315. We granted those petitions and consolidated them. While the matter was pending in our court, the General Assembly enacted amendatory legislation specifically validating the tax authorization methods challenged in this case. The primary issue now before us is whether this new legislation may be applied retroactively to validate the tax levy at issue here. For the reasons that follow, we hold that it can. The judgment of the appellate court is therefore reversed, the judgment of the circuit court granting summary judgment in favor of the Road District is affirmed, and the cause is remanded to the circuit court for further proceedings.

## BACKGROUND

The Illinois Highway Code (605 ILCS 5/1–101 *et seq.* (West 1998), formerly Ill. Rev. Stat. 1977, ch. 121, par. 1–101 *et seq.*), authorizes local road districts to levy permanent-road taxes for the purpose of constructing and maintaining gravel, rock, macadam or other hard roads (see 605 ILCS 5/6–601 *et seq.* (West 1998)). Where a county is organized into townships, as Du Page County is, the township is considered to be and is called the road district for "all purposes relating to the construction, repair, maintenance, financing and supervision" of township roads, except in circumstances not present here. 605 ILCS 5/6–102 (West 1999). Accordingly, Naperville Township, which is located in Du Page County, is the Road District referred to in this case and the entity responsible for the hard-road tax levy involved in this appeal.

The Road District has levied hard-road taxes for many years, both before and after 1979. During that time, however, the statutory authorization schemes governing road district tax levies changed. Prior to 1979, the law limited authority to levy hard-road taxes to no more than five years. After the expiration of the five-year period, townships were required to reauthorize the levy at the annual

township meeting or through a road district election. See Ill. Rev. Stat. 1977, ch. 121, pars. 6–601, 6–602. The Road District received authority for a hard-road tax levy in accordance with these provisions at Naperville Township's 1979 annual township meeting.

After the 1979 hard-road tax levy was approved, the General Assembly amended the law governing hard-road tax levies to repeal the five-year authorization limit. Effective January 1, 1980, authority to levy hard-road taxes, once obtained, would remain permanent until repealed by referendum. See *Ceres One Corp. v. Naperville Township Road District*, 343 Ill. App. 3d 382, 385 (2003).

Between April 1979 and February 1997, the Road District levied a hard-road tax every year without holding a new referendum for its reauthorization. Several objections were filed against the tax. Most were settled. The Road District did not, however, settle objections filed by a group of objectors which included Ceres One Corporation (see *Ceres One Corp. v. Naperville Township Road District*, 343 Ill. App. 3d 382 (2003)). That matter, which was addressed to the Road District's 1996 hard-road levy, remained pending when plaintiffs filed the objections underlying the present appeal.

As part of its challenge to the 1996 levy, Ceres One Corporation asserted that the 1979 authorization on which the 1996 tax levy was based had long since expired and that the statutory amendments eliminating the five-year authorization limit could not be applied retroactively to validate it. In light of that challenge, a decision was made by the Road District to seek authorization of the tax for 1997. Signatures were obtained from 50 registered voters in support of a petition to hold a referendum to obtain the necessary authorization. The signatures were collected in February of 1997, and the petition was received by the Road District's clerk on March 13, 1997. In accordance with statutory requirements, notice of the referendum was subsequently published in a newspaper of general circulation on March 26, 1997. The proposition was duly submitted for a vote at the township meeting on April 8, 1997, and passed. By a vote of 51 to 0, authorization for the tax was granted.

On November 13, 1998, plaintiffs filed a complaint in the circuit court of Du Page County objecting to various taxes levied by several county taxing districts in 1997 and seeking refunds of those taxes. Plaintiffs' Objection H specifically attacked the Road District's 1997

hard-road tax levy on the ground that the 1979 referendum authorizing the tax in question was void because proper notice was not provided per section 6–601 of the Illinois Highway Code (Ill. Rev. Stat. 1977, ch. 121, par. 6–601). The Road District was granted leave to intervene to dispute that objection.

While plaintiff's cause of action was pending in the circuit court, our appellate court entered judgment in the case arising from Ceres One Corporation's challenge to the Road District's 1996 hard-road tax levy. The appellate court's decision affirmed the judgment of the circuit court which had held the 1996 hard-road tax levy invalid. In the appellate court's view, the 1979 hard-road tax authorization, which served as the predicate for the 1996 tax levy, was subject to the five-year authorization contained in the statute at the time the 1979 levy was approved. That period had expired and no new authorization had been sought or granted. Although the General Assembly subsequently repealed the five-year limitation, the court noted that additional legislative action had the effect of partially restoring the five-year limitation. In the appellate court's view, that partial restoration applied to the 1979 hard-road tax. The statutory provision eliminating the five-year limitation applied only to levies approved after January 1, 1980, and could not be applied retroactively to the Road District's 1979 levy. *Ceres One Corp. v. Naperville Township Road District*, 343 Ill. App. 3d at 387.

The appellate court filed its opinion in *Ceres One Corp. v. Naperville Township Road District* on September 30, 2003. On January 27, 2004, the Road District filed a motion for summary judgment in this case with respect to plaintiffs' Objection H, which pertained to the 1997 hard-road tax levy. The Road District's motion contended that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law because, unlike the 1996 hard-road tax levy struck down in *Ceres One Corp. v. Naperville Township Road District*, the 1997 levy was not based on the original 1979 authorization. Rather, as outlined earlier in this opinion, the Road District had obtained new authorization for the levy through a properly called referendum at the annual township meeting held April 8, 1997.

Plaintiffs objected to the Road District's motion for summary judgment on the grounds that the 1997 referendum was invalid.

Plaintiffs pointed out that while the proposition to approve the 1997 hard-road tax was presented as a measure to extend, reauthorize and reaffirm a hard-road tax levy already in existence, there was no valid hard-road tax levy then in existence. The original 1979 authorization had lapsed years earlier without being renewed, and the 1996 tax levy based on that authorization had been declared invalid. There being no valid existing hard-road tax, plaintiffs argued that the 1997 measure was, instead, an attempt to establish and increase township taxes. Such measures are governed by section 30–20(b) of the Township Code (60 ILCS 1/30–20(b) (West 1998)). That statute precludes electors at annual township meetings from establishing or increasing township taxes unless the proposal to take such action is supported by a petition containing the signatures of not less than 10% of the registered voters in the township. 60 ILCS 1/30–20(b) (West 1998). According to plaintiffs, the 50 signators to the petition submitted at the April 8 township meeting represented far less than 10% of Naperville Township's registered voters. The electors present at the annual township meeting therefore had no authority to approve the 1997 hard-road tax levy.

Plaintiffs argued that the 1997 hard-road tax levy was also fatally infirm because the notice requirements of section 6–601(a) of the Illinois Highway Code (605 ILCS 5/6–601(a) (West 1998)) were not satisfied. Under that statute, notice by publication is not sufficient. Where propositions for or against hard-road taxes are to be taken up at an annual township meeting, notices that the proposition will be voted upon must be posted in at least 10 of the most public places in the town at least 10 days prior to the meeting. 605 ILCS 5/6–601(a) (West 1998). Plaintiffs contended that the Road District had failed to show that the requisite notice had, in fact, been given in this case.

In reply to plaintiffs' objections, the Road District argued that plaintiffs were improperly attempting to raise new objections to the 1997 tax levy beyond those contained in their original pleadings. The Road District also disputed plaintiffs' arguments on the merits. First, it contended that section 30–20(b) of the Township Code (60 ILCS 1/30–20(b) (West 1998)) did not apply to the permanent-road tax because, contrary to plaintiffs' characterization, the referendum in question reauthorized an existing tax. It did not establish or increase a tax rate. Second, the Road District argued that it had, in fact,

complied with the notice requirements set forth in section 6–601(a) (605 ILCS 5/6–601(a) (West 1998)). In support of that argument, the Road District submitted a fax from the township clerk to the township attorney listing the places where the notices were posted. Finally, the Road District urged the circuit court to reject a request submitted by plaintiffs to permit further discovery prior to disposition of the motion for summary judgment.

Following a hearing, the circuit court found the Road District's arguments to be meritorious and entered summary judgment in favor of the Road District and against plaintiffs with respect to plaintiffs' objections to the 1997 hard-road tax.[1] In so doing, the court made an express written finding pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)) that there was no just reason to delay enforcement or appeal of its judgment.

Plaintiffs moved to vacate the circuit court's judgment and for leave to amend their objection to the 1997 hard-road tax levy in order to incorporate arguments raised in their response to the Road District's motion for summary judgment. When the circuit court declined to vacate the judgment or to allow plaintiffs leave to amend, they filed an interlocutory appeal. On that appeal, the appellate court found, as plaintiffs had argued, that the referendum regarding the 1997 hard-road tax levy was, indeed, a measure to establish or increase a township tax rate and was therefore governed by section 30–20(b) of the Township Code (60 ILCS 1/30–20(b) (West 1998)). 356 Ill. App. 3d at 891. To be valid under that statute, the measure had to have been supported by petitions containing signatures of no fewer than 10% of the registered voters in the township. In light of the fact that the petitions contained only 50 signatures, the appellate court concluded that there remained a genuine issue as to whether the minimum number of signatures required by section 30–20(b) had been secured. The court therefore reversed the circuit court's entry of summary judgment and remanded for further proceedings. 356 Ill. App. 3d at 893. Both the Du Page County treasurer and the Road

---

[1]In the same order, the circuit court also granted summary judgment in favor of the Naperville Township on a separate set of objections asserted in plaintiffs' initial pleadings. That aspect of the case is not relevant to the matter before us here and requires no further discussion.

District petitioned our court for leave to appeal. 177 Ill. 2d R. 315. We granted those petitions in September of 2005 and consolidated them.

Shortly thereafter, the General Assembly enacted Public Act 94–692 (Pub. Act 94–692, eff. November 3, 2005). That statute amended the Illinois Highway Code by adding section 6–620. The new provision states:

> "(a) Any road district tax that was authorized by the electors at an annual or special town meeting during the years 1975 through 1979 for a period not exceeding 5 years, but that was not re-authorized within 5 years after it was authorized due to [the legislation] which repealed the 5-year limitation, is hereby validated for all tax levy years subsequent to 1980 only to the extent that the authority to tax did not automatically expire after 1980.
>
> (b) Any road district tax that was levied prior to 1980 shall not be subject to the requirements of subsection (b) of Section 30–20 of the Township Code if that tax was or is:
>
> > (i) re-authorized by the electors at an annual or special town meeting after the year 1980; and
> >
> > (ii) levied at least once during the 3-year period preceding the reauthorization." Pub. Act 94–692, eff. November 3, 2005, adding 605 ILCS 5/6–620.

Public Act 94–692 also amended section 30–20(b) of the Township Code (Pub. Act 94–692, eff. November 3, 2005, amending 60 ILCS 1/30–20(b)) to include coordinating language. With the new language indicated in italics, the provision now reads:

> "(b) Notwithstanding the provisions of any other Act, *except as provided in Section 6–620 of the Illinois Highway Code*, before establishing or increasing any township tax rate that may be established or increased by the electors at the annual township meeting, a petition containing the signatures of not less than 10% of the registered voters of the township must be presented to the township clerk authorizing that action."

Public Act 94–692 was initially vetoed by the Governor. The General Assembly overrode that veto, and the new law took effect on

November 3, 2005. It is against this background that the case is now before us for a decision on the merits.

## ANALYSIS

While many aspects of this matter are open to dispute, one thing is not. Under Public Act 94–692, the authorization obtained in 1979 for the hard-road tax levy cannot be deemed to have expired and the 1997 levy is not subject to challenge on the grounds that it failed to comply with section 30–20(b) of the Township Code (60 ILCS 1/30–20(b) (West 1998)). If the Act applies, plaintiffs would therefore no longer have any valid basis for objecting to the 1997 hard-road tax levy. The arguments they advanced in the circuit and appellate courts would be moot, and the judgment of the appellate court reversing the circuit court's entry of summary judgment in favor of the Road District could not stand. The principal issue we must therefore decide is whether Public Act 94–692 can be applied to validate the 1997 hard-road tax levy.

As noted, this matter comes before us in the context of a motion for summary judgment. Summary judgment is proper if, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2–1005(c) (West 1998). The interpretation and applicability of legislation present questions of law resolvable through summary judgment. See *Barnett v. Zion Park District*, 171 Ill. 2d 378, 385 (1996). We review a circuit court's grant of summary judgment *de novo*. *Illinois State Chamber of Commerce v. Filan*, 216 Ill. 2d 653, 661 (2005). *De novo* review likewise guides our consideration of the meaning and effect of statutory provisions. *Hawthorne v. Village of Olympia Fields*, 204 Ill. 2d 243, 254-55 (2003).

Whether Public Act 94–692 should be applied to the hard-road tax levy challenged in this case turns on questions of retroactivity. In assessing whether a statute applies retroactively, this court has adopted the approach set forth by the United States Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994). *Commonwealth Edison Co. v. Will County*

*Collector*, 196 Ill. 2d 27, 37-39 (2001). The *Landgraf* analysis consists of two steps. First, if the legislature has expressly prescribed the statute's temporal reach, the expression of legislative intent must be given effect absent a constitutional prohibition. Second, if the statute contains no express provision regarding its temporal reach, the court must determine whether the new statute would have retroactive effect, keeping in mind the general principle that prospectivity is the appropriate default rule. In making this determination, a court will consider whether retroactive application of the new statute will impair rights a party possessed when acting, increases a party's liability for past conduct, or impose new duties with respect to transactions already completed. If retrospective application of the new law has inequitable consequences, a court will presume that the statute does not govern absent clear legislative intent favoring such a result. *Landgraf*, 511 U.S. at 280, 128 L. Ed. 2d at 262, 114 S. Ct. at 1505; see *Commonwealth Edison Co.*, 196 Ill. 2d at 38.

After adopting the *Landgraf* framework, our court considered the effect of section 4 of the Statute on Statutes (5 ILCS 70/4 (West 1998)) on our retroactivity analysis. Section 4, often referred to as the general saving clause of Illinois (see *People v. Glisson*, 202 Ill. 2d 499, 505 (2002)), provides:

> "No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding." 5 ILCS 70/4 (West 1998).

Our court has recognized section 4 as a clear legislative directive as to the temporal reach of statutory amendments and repeals when none is otherwise specified: those that are procedural may be applied retroactively, while those that are substantive may not. *Caveney v. Bower*, 207 Ill. 2d 82, 92 (2003). This principle applies to civil as well as criminal enactments. *Caveney v. Bower*, 207 Ill. 2d at 92-93. In

light of the statute, we have held that an Illinois court need never go beyond step one of the *Landgraf* test. *People v. Atkins*, 217 Ill. 2d 66, 71 (2005). That is because the legislature will always have clearly indicated the temporal reach of an amended statute, either expressly in the new legislative enactment or by default in section 4 of the Statute on Statutes. *Caveney v. Bower*, 207 Ill. 2d at 95.

Because it is a *default* standard, section 4 of the Statute on Statutes is inapplicable to situations where the legislature has clearly indicated the temporal reach of a statutory amendment. Whenever a court is called upon to assess the applicability of a statutory change, the court must therefore still make an initial determination as to whether the legislature has clearly indicated the amended statute's temporal reach. If it has, there is no need to invoke section 4 of the Statute on Statutes. Rather, in accordance with *Landgraf*, the expression of legislative intent must be given effect absent constitutional prohibition. *Caveney v. Bower*, 207 Ill. 2d at 94.

The approach set forth in *Landgraf* and adopted by our court is time-neutral. That is, its applicability is not affected by whether the expression of legislative intent calls for prospective or retroactive application. If the General Assembly has clearly expressed an intention that a statute be given retroactive effect, we must honor that intention unless the constitution prohibits us from doing so.

*Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27 (2001), cited in *Caveney v. Bower*, 207 Ill. 2d at 95, illustrates this principle. In that case, the General Assembly had amended section 5–1024 of the Counties Code (55 ILCS 5/5–1024 (West 1994)) and section 9–107 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/9–107 (West 1994)) to (a) validate prior levies made by the county to cover the costs of insuring or otherwise defending itself against workers compensation and tort immunity claims and (b) prospectively exclude such levies from the general corporate rate limitation. A challenge was filed to certain taxes levied by Will County prior to the amendment's becoming a law. Because we determined that the General Assembly had clearly intended to reach those earlier tax levies, and because we concluded that retroactive application would not offend the constitution, we gave effect to the legislature's intent

-10-

and upheld the statutory amendment. *Commonwealth Edison*, 196 Ill. 2d at 42.

With these principles in mind, we now consider Public Act 94–692, the statute at issue in this case, which added section 6–620 to the Illinois Highway Code and amended section 30–20(b) of the Township Code. The initial inquiry, whether the General Assembly expressly indicated the temporal reach of the statute, is easily answered. Clearly it did. As described earlier in this opinion, the new section 6–620 of the Illinois Highway Code is specifically directed to specified Road District taxes authorized by electors at annual or special township meetings during certain years prior to Public Act 94–692's enactment. The corresponding amendment to section 30–20(b) of the Township Code exempts those prior levies from statutory requirements to which they might otherwise have been subject. Because the changes in the law were thus directed toward events occurring before Public Act 94–692 took effect, they are intrinsically retroactive. Anything other than retroactive application could not be squared with statute's clear and unambiguous terms. That the General Assembly intended the law to apply retroactively is therefore obvious.

As we have discussed, where as here the legislature clearly intends for a statute to be applied retroactively, *Landgraf* and our decisions applying that case require that we honor the legislature's intention unless doing so would contravene the constitution. *Caveny v. Bower*, 207 Ill. 2d at 94. Plaintiffs in this case contend that upholding Public Act 94–692 to validate the 1997 hard-road tax levy would be unconstitutional for three reasons. First, they contend that the legislation violates the doctrine of separation of powers set forth in article II, section 1, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. II, §1). Second, they assert that applying the new law to uphold the 1997 tax levy would deprive them of property without due process of law in violation of article I, section 2, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, §2). Finally, for the same reasons they claim that the statute contravenes article I, section 2, of the Illinois Constitution, plaintiffs argue that it also violates the due process clause of the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV).

Whether an enactment by the General Assembly is constitutional is a matter we consider *de novo*. In undertaking our review, we presume that statutory enactments are constitutional. The burden is on the party challenging the statute to clearly establish any constitutional invalidity. The burden is a formidable one, and this court will uphold a statute's validity whenever it is reasonably possible to do so. *Vaugniaux v. Department of Professional Regulation*, 208 Ill. 2d 173, 193 (2003).

## 1. Separation of Powers

Article II, section 1, of the Illinois Constitution of 1970 provides that the legislative, executive and judicial branches of government are separate and that "no branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, §1. The purpose of this doctrine is to insure that each of the three branches of government retains its own sphere of authority, free from undue encroachment by the other branches. *People v. Izzo*, 195 Ill. 2d 109, 116 (2001). In the context of the interplay between the legislature and the judiciary, the doctrine has been interpreted to mean that the legislature's role is to make the law and the judiciary's role is to interpret the law. *Bates v. Board of Education, Allendale Community Consolidated School District No. 17*, 136 Ill. 2d 260, 267 (1990).

Plaintiffs assert that the General Assembly overstepped its bounds when it enacted Public Act 94–692 because the legislation effectively nullifies the construction given to the prior law by the appellate court in *Ceres One Corp. v. Naperville Township Road District* and represents an impermissible attempt by the General Assembly to tell this court how to decide the present case. In making this argument, plaintiffs fail to recognize the distinction between curative legislation and a legislative declaration of the General Assembly's earlier intent. There is no question that after a final judicial interpretation of legislative intent, the legislature may not put into effect a change in that construction through a later declaration of what it did intend. See *People v. Rink*, 97 Ill. 2d 533, 541 (1983). Our court has long held, however, that legislature may by a curative act validate any proceeding which it might have authorized in advance, provided the power is so exercised as not to infringe on constitutionally protected

rights of the parties involved. *Bates*, 136 Ill. 2d at 268; *Worley v. Idelman*, 285 Ill. 214, 219 (1918).

Public Act 94–692 is curative legislation, not an unconstitutional attempt to legislatively overrule a court's interpretation of the legislature's intent. A comparison with *Bates* makes this clear. In *Bates*, taxpayers challenged bonds issued by the defendant school district on the grounds that the bonds bore an interest rate higher than that permitted by law. The interest rate on the bonds was 9.75%. Although that rate was permissible under the Bond Authorization Act (Ill. Rev. Stat. 1983, ch. 17, par. 6601 *et seq.*), it exceeded the 7% ceiling established by section 17–2.11a of the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 17– 2.11a). The taxpayers argued that the School Code provisions, rather than the ceiling imposed by the Bond Authorization Act, controlled. The appellate court agreed. *Bates v. Board of Education, Allendale Community Consolidated School District No. 17*, 183 Ill. App. 3d 164 (1989). The defendant school district then appealed to our court.

While the matter remained on appeal, the General Assembly enacted Public Act 86–4 (Pub. Act 86–4, eff. June 6, 1989). That statute (1) validated all government instruments for payment of money duly issued before the effective date of the Act provided, among other things, that they comported with any of Illinois' omnibus bond authorization acts; (2) amended the School Code by deleting the 7% interest-rate ceiling on school-issued bonds and substituting the interest ceiling set forth in the Bond Authorization Act; and (3) declared that the legislature had always intended that bonds issued under the School Code be permitted to take advantage of less restrictive provisions of Illinois' omnibus bond acts either before, on, or after the effective date of the new law. *Bates*, 136 Ill. 2d at 264-65.

To the extent that Public Act 86–4 purported to ascribe a different legislative intent to the prior version of the law than the one declared by the appellate court, our court found that the Act violated separation of powers principles under the Illinois Constitution. *Bates*, 136 Ill. 2d at 267. Insofar as the Act reached back to validate the challenged school bonds, however, our court held that it was merely curative legislation. That aspect of the legislation did not attempt to attribute to the statute a meaning different from the one declared in the appellate court's opinion. Rather it provided authorization for the

higher interest rate, authorization that the General Assembly unquestionably could have granted at the time the bonds were originally issued. In exercising that authority after the fact, the legislature infringed no protected rights because, at the time the amendatory Act took effect, final judgment had not yet been rendered in the case. It remained pending on appeal. Accordingly, our court held that this aspect of the Act did not violate separation of powers principles and was valid. *Bates*,136 Ill. 2d at 268-70.

The legislation in the present case is directly analogous to curative provisions of Public Act 86–4, the statute at issue in *Bates*. No after-the-fact declaration of intent was made concerning the preamendatory law. No final judgment was disturbed. Prior to this proceeding, the specific taxes at issue, those for 1997, had not been invalidated by a court of law. When the General Assembly enacted Public Act 94–692 and specifically validated the 1997 hard-road taxes whose legality was subject to challenge under the preamendent versions of the Illinois Highway Code and Township Code, it engaged in a course of conduct that it would unquestionably have been entitled to undertake before the taxes were levied. Moreover, as in *Bates*, when the new law went into effect, the legal proceedings initiated by the plaintiffs in this case were not final. The case remained pending. Although the new law produced a different result than was reached by the appellate court in *Ceres One Corp.*, the General Assembly may enact retroactive legislation which changes the effect of a prior decision of a reviewing court with respect to cases which have not been finally decided. *Sanelli v. Glenview State Bank*, 108 Ill. 2d 1, 19 (1985). We therefore reject plaintiffs' contention that Public Act 94–692 violated the separation of powers provisions of the Illinois Constitution.

### 2. Due Process Under the Illinois and Federal Constitutions

Plaintiffs next argue that application of Public Act 94–692 to validate the 1997 hard-road tax levy would violate their rights to due process under article I, section 2, of the Illinois Constitution of of 1970 and the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV). This argument must also fail. That a tax measure has retroactive application does not necessarily place it in violation of the state and federal constitutions. Taxes imposed pursuant to state law may withstand due process scrutiny even where,

as here, they apply retroactively provided that certain requirements are met. See *Commonwealth Edison*, 196 Ill. 2d at 43-44.

Whether a retroactive tax measure contravenes state or federal due process protections depends on the circumstances of each case. The pivotal inquiry is whether retroactive application is so harsh and oppressive as to transgress constitutional limitations. In making that determination, courts have considered various factors. Among these are (1) the legislative purpose for which the statute was enacted, (2) the length of the period of retroactivity, (3) whether the taxpayer reasonably and detrimentally relied on the prior law, and (4) whether the taxpayer had adequate notice of the change in the law. *Commonwealth Edison*, 196 Ill. 2d at 43-44.

The United States Supreme Court has been very reluctant to override legislative judgment concerning the necessity for retroactive taxation. Consistent with that view, the scope of inquiry under the due process clause of the federal constitution is extremely limited. In that regard, we note, as we did in *Commonwealth Edison*, that neither lack of notice nor detrimental reliance are dispositive factors in determining whether the retroactive application of a tax amendment violates federal due process guarantees. *Commonwealth Edison*, 196 Ill. 2d at 44, citing *United States v. Carlton*, 512 U.S. 26, 33-34, 129 L. Ed. 2d 22, 30, 114 S. Ct. 2018, 2023 (1994); C. Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv. L. Rev. 692, 706 (1960).

With respect to the question of legislative purpose, we have held that legislation applying a tax measure retroactively must not be illegitimate or arbitrary. *Commonwealth Edison*, 196 Ill. 2d at 44. Plaintiffs in this case assert that they, and possibly their lawyer, were singled out for retribution because the appellate court ruled in their favor. While use of retroactive taxation as a means of retribution against unpopular groups or individuals is impermissible (*Commonwealth Edison*, 196 Ill. 2d at 44, citing *Carlton*, 512 U.S. at 32, 129 L. Ed. 2d at 29, 114 S. Ct. at 2023), we find nothing in the record to support the contention that these plaintiffs or their lawyers were in any way singled out by the General Assembly. The taxes validated by Public Act 94–692 applied generally to taxpayers in Naperville Township. They were not limited to these plaintiffs. Moreover, there is no indication that the General Assembly had any

purpose other than to correct an error in the Road District's hard-road tax levy after the problem was brought to its attention by township officials.

Plaintiffs intimate that the township's desire to avoid the effect of the appellate court's judgment in *Ceres One Corp.* and the fact that the legislation was initially vetoed by the Governor are indicative of an improper purpose. We disagree. As we have discussed, curative legislation is permissible under Illinois law. That being so, we can see no impropriety in approaching one's legislators to obtain such curative legislation, as Naperville Township officials did. While plaintiffs may strongly disagree with the decision of those local elected officials to seek legislative recourse in the General Assembly, their frustration that the General Assembly intervened to validate the challenged tax is not sufficient justification for judicial nullification of an otherwise valid legislative enactment. Plaintiffs' recourse for such conduct by their elected representatives is through the political process, not the courts.

We likewise reject the notion that the Governor's attempt to veto Public Act 94–692 is indicative of any improper purpose by the legislature. The statement issued by the governor when he vetoed the law explained that he did not want to intercede in a taxing scheme which he believed should be left to local voters. He was entitled to express that view and to exercise his veto power. The General Assembly, however, was equally entitled to reject the governor's view and override his veto. See Ill. Const. 1970, art. IV, §9. It did so. Nothing in either the governor's action or the legislature's reaction suggests that anything improper occurred.

The next factors we must consider under our due process analysis are the length of the period of retroactivity, whether the taxpayer reasonably and detrimentally relied on the prior law, and whether the taxpayer had adequate notice of the change in the law. Under the facts of this case, these considerations are inconsequential. While Public Act 94–692 pertained to a tax levy made seven years earlier, its enactment did not alter plaintiffs' position. They had already paid the taxes for the year in question. The new law did not increase the tax rate, eliminate deductions or exemptions, or affect in any way the amount of taxes for which plaintiffs had originally been billed by the county's collector of revenue. It merely cured a technical problem with the manner in which the taxes had been authorized. In light of the

appellate court's decision in *Ceres One Corp.*, decided before the new law took effect, plaintiffs may have hoped for a refund of their 1997 taxes. That hope, however, had not yet ripened into a final judgment in their favor. To the contrary, at the time the new legislation was enacted, all the appellate court had done is reverse summary judgment in favor of the Road District and remand for further proceedings. Under the appellate court's decision, there remained a possibility that the 1997 tax levy would still be valid under the prior version of the law.

So far as we can tell, there is but one thing plaintiffs might have done differently had they known earlier that the Public Act 94–692 would be enacted. They might have decided against filing an objection to the 1997 hard-road tax levy in the first place. Had no such challenge been brought, however, plaintiffs would still have been required to pay the tax, just as they are required to pay it under the judgment we render today. The only difference is that they would have saved whatever money they expended for fees and costs in prosecuting their objection. In the end, those legal fees yielded them no benefit. That, however, is an inherent risk in all litigation. It is not a sufficient justification for nullifying otherwise valid curative legislation. We therefore do not believe that plaintiffs have sustained their burden of clearly showing that Public Act 94–692 is unconstitutional.


## CONCLUSION

Public Act 94–692 cured the defects on which plaintiffs' challenge to the Road District's 1997 hard-road tax levy was based. Retroactive application of that curative legislation statute was permissible under Illinois law. It did not violate principles of separation of powers or deprive plaintiffs of their rights to due process under the state or federal constitutions. The Road District was therefore entitled to summary judgment, and the appellate court erred in reversing the circuit court's entry of summary judgment in favor of the Road District and against plaintiffs.

For the foregoing reasons, the judgment of the appellate court is reversed. The judgment of the circuit court is affirmed. The cause is

remanded to the circuit court for further proceedings consistent with this opinion.

*Appellate court judgment reversed;*
*circuit court judgment affirmed;*
*cause remanded.*

JUSTICE BURKE took no part in the consideration or decision of this case.