In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-3865

CARL E. THOMAS,

*Plaintiff-Appellee,*

*v.*

GUARDSMARK, LLC,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division
No. 02-C-8848—**Suzanne B. Conlon,** *Judge.*

ARGUED APRIL 10, 2006—DECIDED JUNE 5, 2007

Before EASTERBROOK, *Chief Judge*, and RIPPLE and
ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* On the heels of the terrorist
attacks of September 11, 2001, Channel 2 news in Chicago
ran a story about lax regulation of security guards in
Illinois. Carl E. Thomas, a security officer for Guardsmark,
LLC (then Guardsmark, Inc., hereinafter "Guardsmark"),
appeared in that story and stated that once, while work-
ing as a security guard at an oil refinery, he had worked
alongside a fellow guard who boasted of having a criminal
record. Guardsmark suspended and then fired Thomas
for speaking to the media. Thomas brought suit for re-
taliatory discharge and a jury awarded him back pay and
damages. Guardsmark unsuccessfully moved for judg-

ment as a matter of law on several grounds, including the one on appeal—that Mr. Thomas' claim should have been dismissed because it did not satisfy the requirements of the Illinois Whistleblower Act. We affirm.

**I.**

As in any case involving diversity jurisdiction, before proceeding to the merits, this court must independently determine whether the parties meet the diversity and amount in controversy requirements of 28 U.S.C. § 1332. *Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 992 (7th Cir. 2007). Guardsmark's opening brief stated only that the district court had jurisdiction "due to the diversity of citizenship of the parties." Thomas' brief incorrectly affirmed that Guardsmark's jurisdictional statement was complete and correct.

We hope to make it clear once and for all (if such a wish for finality were possible) that an appellant's naked declaration that there is diversity of citizenship is never sufficient. Our Circuit Rule 28 requires more. It states, in no uncertain terms, that if jurisdiction depends on diversity of citizenship, the statement shall identify the citizenship of each party to the litigation. It then goes on to say, "[i]f any party is a corporation, the statement shall identify both the state of incorporation and the state in which the corporation has its principal place of business. If any party is an unincorporated association or partnership the statement shall identify the citizenship of all members." Cir. R. 28(a)(1). We have repeatedly warned that when one party to the litigation is someone other than a natural person suing in her own capacity, "a jurisdictional warning flag should go up" and the parties should carefully scrutinize the requirements of Circuit Rule 28(a)(1). *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998). In this case, Guardsmark was, at the time

of removal, a limited liability company. For diversity jurisdiction purposes, the citizenship of an LLC is the citizenship of each of its members. *Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 992 (7th Cir. 2007). Consequently, an LLC's jurisdictional statement must identify the citizenship of each of its members as of the date the complaint or notice of removal was filed, and, if those members have members, the citizenship of those members as well. In its opening brief, Guardsmark failed to identify the citizenship of any of its members. And in its Notice of Removal before the district court, Guardsmark incorrectly identified itself as a corporation rather than an LLC. (R. at 1).

When this court determined that both the appellant's and the appellee's jurisdictional statements were deficient, it issued an order directing the parties to submit corrected statements. In that order the court not only cited Circuit Rule 28(a)(1), but went two steps further; it specifically ordered the appellant to "provide a complete disclosure of its members' identities and citizenships and, if necessary, the members' members' identities and citizenships." March 27, 2006 Order. The order then cited three Seventh Circuit cases to which the appellant could turn for guidance regarding the level of specificity required (and, parenthetically, for a fair warning of the fate of those who fail to comply).

In response to the order, Guardsmark filed a supplemental jurisdictional statement revealing that the LLC had two members, one, a corporation, and the other, a partnership. Despite the clear instructions in the order, Guardsmark's corrected jurisdictional statement neglected to identify the partnership or the names of the partners in that partnership. "Once the court sounds the alarm, the litigants must be precise," *America's Best Inns, Inc. v. Best Inns of Abilene*, 980 F.2d 1072, 1073 (7th Cir. 1992), and the court can no longer take on faith the law-

yer's blanket declaration that the partners are citizens of another state.

The normal course of events at this point is to dismiss for want of subject matter jurisdiction. *See Guar. Nat'l Title Co. v. J.E.G. Assoc.*, 101 F.3d 57, 59 (7th Cir. 1996); *America's Best Inns, Inc.*, 980 F.2d at 1074. In this case we gave the parties a more-than-generous third opportunity by order of April 10, 2006, and their response satisfies the requirements of diversity jurisdiction. Had we done otherwise, Guardsmark would have received a windfall—having the verdict against it vacated and the case dismissed for want of jurisdiction, due to its own failure to correctly identify the source of diversity jurisdiction. *See Guar. Nat'l Title Co.*, 101 F.3d at 59; *America's Best Inns, Inc.*, 980 F.2d at 1074. Thomas, who recovered a verdict below, should not now lose that verdict based on the faulty lawyering of his opponent.[1]

---

[1] We should note, however, that Thomas did contribute to the error by asserting in its brief that Guardsmark's jurisdictional statement was "complete and correct." "We have warned litigants about the precise pattern observed here—a patently erroneous jurisdictional statement by the appellant, and a patently erroneous statement by the appellee that the appellant's jurisdictional statement is complete and correct." *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001). In this case "patently erroneous" might be too strong of a claim, as we do recognize that some information may be in the hands of the appellant and difficult for the appellee to obtain. In this case, for example, Thomas would have had no reason to question Guardsmark's identification as a corporation in its notice of removal. (Guardsmark altered its status from corporation to limited liability company six days after filing the initial state court complaint in this matter.) On the other hand, Thomas certainly should have noted that Guardsmark's brief failed to "identify both the state of incorporation and the state in which

(continued...)

Guardsmark's additional opportunity to correct the jurisdictional statement, however, comes with a loud and close shot across the bow. The next time our cannons may not be aimed so high. As for this case, we order Guardsmark to pay the court $1,000 as a sanction for violations of this court's rules and orders as described above.

## II.

Having scraped by that hurdle, we can begin our analysis of the merits of the case which will be aided by a more detailed description of the facts. In October 2001, a news reporter in Chicago approached Thomas for a story about lax regulation of security guards in Illinois. It was then that Mr. Thomas told the reporter that he had worked alongside another newly hired Guardsmark security guard who told Thomas he had a criminal record. The reporter asked Thomas if he would be willing to be interviewed on camera. Thomas contacted his supervisor for permission, before agreeing to the on-air interview. One week after the interview aired, on November 16, 2001, the Chicago regional manager of Guardsmark summoned Thomas to his office and suspended him pending further investigation into whether he had proper authorization to appear on the telecast. From that time until some

---

[1] (...continued)

the corporation has its principal place of business" as Circuit Rule 28(a)(1) requires for a corporation, or to "identify the citizenship of all members," as the rule requires for unincorporated associations or partnerships. Cir. R. 28(a)(1). Nevertheless, dismissing a legitimately earned verdict in its favor where it turns out that the district court did indeed have proper federal jurisdiction would have been a high price to pay for a failure to catch opposing counsel's error.

time in fall 2002, Thomas' employment status was unclear. Guardsmark did not initiate the paperwork to terminate Mr. Thomas until just before he filed his lawsuit in October 2002.

After a jury award in Thomas' favor, Guardsmark raised numerous claims of error, all of which the district court judge rejected. In a motion for judgment as a matter of law filed two weeks after the jury verdict, Guardsmark argued for the first time that Mr. Thomas' claim should have been dismissed because it did not satisfy the requirements of the Illinois Whistleblower Act, 740 Ill. Comp. Stat. 174/1-35. Thomas countered that he had never alleged a claim under the Act and that its similarity to common law retaliatory discharge claims did not convert his tort claim into a claim under the new Act. The district court agreed with Thomas emphasizing simply that "Thomas did not assert an Illinois Whistleblower Act Claim." (R. at 111, p.4). That is the sole issue on which Guardsmark seeks our de novo review. *See Pearson v. Welborn*, 471 F.3d 732, 737 (7th Cir. 2006) (appellate court applies de novo review to the district court's denial of judgment as a matter of law).

The Illinois Whistleblower Act prohibits an employer from "retaliat[ing] against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 Ill. Comp. Stat. 174/15. The tort of retaliatory discharge under Illinois common law is a narrow exception to the at-will employment doctrine and can be established if a plaintiff shows that (1) she has been discharged; (2) in retaliation for her activities; and (3) the discharge violates a clear mandate of public policy. *Zimmerman v. Buchheit of Sparta, Inc.*, 645 N.E.2d 877, 881 (Ill. 1995).

On appeal, Guardsmark argues that the Illinois common law tort of retaliatory discharge has been codified—and thus superseded—by the Illinois Whistleblower Act, 740 Ill. Comp. Stat. 174/1-35, and that Thomas failed to state a cause of action for retaliatory discharge because he did not engage in activity protected by the Whistleblower Act. Thomas counters that the Whistleblower Act did not abrogate the common law cause of action for retaliatory discharge but merely gave employees additional protection for whistle-blowing activities. Thomas further argues that even if the Whistleblower Act did abrogate the common law claim, the Whistleblower Act could not be applied to a lawsuit brought over a year before the effective date of the Act. Guardsmark terminated Thomas some time between November 15, 2001 and October 2002, for conduct which occurred in November 2001.[2] The Illinois Whistleblower Act went into effect on January 1, 2004. Because the entirety of Guardsmark's appeal hangs on the question of whether Thomas stated a claim for retaliatory discharge under the Whistleblower Act, first we must determine whether the Act can be applied retroactively.

To determine whether a statute applies retroactively, the Illinois Supreme Court has adopted the same approach that the United States Supreme Court enunciated in

---

[2] The date of termination was one of the disputed issues sent to the jury. Guardsmark suspended Thomas on November 16, 2001. In March 2002, Thomas asked for the money accumulated in his 401(k) account. Guardsmark denied the request on the grounds that he was still an employee. Guardsmark did not initiate the paperwork to terminate Thomas until just before he filed suit in October 2002. The jury answered the following special interrogatory in the negative: "Do you find that Mr. Thomas knew or reasonably should have known by April 30, 2002, that his employment with Guardsmark was terminated?" (Trial transcript at 481).

*Landgraf v. USI Film Product.*, 511 U.S. 244 (1994).
*Allegis Realty Investors v. Novak*, 860 N.E.2d 246, 252 (Ill.
2006), cert. denied, 127 S. Ct. 2100 (2007). It begins with
the default presumption that a statute acts prospectively
only. *Landgraf*, 511 U.S. at 272. Of course a clear legisla-
tive intent to apply a statute retroactively can defeat
this default rule. *Id.* at 280. Consequently, the first step
under the *Landgraf* analysis is to determine whether the
legislature expressly prescribed the statute's temporal
reach. *Landgraf*, 511 U.S. at 280; *Allegis Realty*, 860
N.E.2d at 253. If so, the legislature's intent must be given
effect unless it would violate the Constitution. *Id.* If the
statute contains no express provision regarding retro-
activity, then the court must go on to step two and deter-
mine whether the new statute would have a retroactive
effect by considering whether the retroactive application
of the new statute will impair rights a party possessed
when acting, increase a party's liability for past conduct,
or impose new duties with respect to transactions already
completed. *Id.*

The Illinois Supreme Court has concluded, however, that
an Illinois court (and consequently, a federal court apply-
ing substantive Illinois law) need never go beyond step
one of the *Landgraf* test. *People v. Atkins*, 838 N.E.2d 943,
947 (Ill. 2005). This is so because even if the legislature's
intention regarding temporal reach is not found in the
statute itself, it can be found in section 4 of Illinois'
Statute on Statutes (5 Ill. Comp. Stat. 70/4). *Caveney v.
Bower*, 797 N.E.2d 596, 603 (Ill. 2003). According to that
section, unless otherwise stated, procedural changes to
statutes may be applied retroactively while substantive
ones may not. *Atkins*, 838 N.E.2d at 947. In short, because
of section 4 of Illinois' Statute on Statutes "the legisla-
ture will always have clearly indicated the temporal
reach of an amended statute, either expressly in the new
legislative enactment or by default in section 4 of the

Statute on Statutes." *Allegis Realty*, 860 N.E.2d at 253. Because the Illinois General Assembly did not expressly indicate whether the Whistleblower Protection Act applied retroactively, we look to section 4 of the Statute on Statutes and evaluate whether the Whistleblower Protection Act is a procedural or substantive change to the previous common law tort of retaliatory discharge.

Guardsmark makes the stupefying and bald declaration that the Whistleblower Act is procedural. Rules of procedure are concerned solely with accuracy and economy in litigation. *Barron v. Ford Motor Co.*, 965 F.2d 195, 199 (7th Cir. 1992). They are rules "addressed to lawyers and judges in their professional roles and govern the means by which disputes regarding the content or application of substantive rules should be resolved. The purpose of these rules is to achieve accuracy, efficiency, and fair play in litigation, without regard to the substantive interests of the parties." Michael Lewis Wells, *The Impact of Substantive Interests on the Law of Federal Courts*, 30 Wm. & Mary L. Rev. 499, 504 (1989). Or as another scholar similarly explained,

> A procedural rule is [ ] one designed to make the process of litigation a fair and efficient mechanism for the resolution of disputes. Thus, one way of doing things may be chosen over another because it is thought to be more likely to get at the truth, or better calculated to give the parties a fair opportunity to present their sides of the story, or because . . . it is a means of promoting the efficiency of the process.

John Hart Ely, *The Irrepressible Myth of Erie*, 87 Harv. L. Rev. 693, 724-25 (1974). Substantive rules, on the other hand, are concerned with directing behavior outside of the courtroom. *Barron*, 965 F.2d at 199. They tell individuals, organizations and governments to do certain things or abstain from certain conduct on pain of some sanction. Lewis, *supra*, at 504.

It is true that, in some cases, the line between substance and procedure is not always crystal clear. *Atkins*, 838 N.E.2d at 947. But this is not one of those cases. The substantive nature of the Whistleblower Act could not be more clear. It does not regulate the behavior of lawyers and judges in order to make the process of litigation fair and efficient. It instructs employers to abstain from certain activities such as retaliating against employees who blow the whistle. It addresses the substantive rights of employees to protection from retaliatory conduct by employers. Finally, it tells employers what sorts of sanctions they face for failing to obey the statute.

Guardsmark's only argument for defining the Whistleblower statute as procedural is that the new act "defined the statutory means by which a whistleblower plaintiff could seek redress for retaliatory discharge." (Guardsmark Brief at 9). Any new substantive remedy, however, defines the means by which a plaintiff can seek redress by saying, in short, "yesterday you had to sit at home and suffer silently for your harm. Today, you may file a complaint in the Circuit Court of Cook County, Illinois." This does not turn every new substantive statute into a procedural one. There can be, of course, other procedural ramifications of substantive changes. For example, court proceedings under section 25 of the Act (which makes a violation of the Whistleblower Act a Class A misdemeanor) would likely be initiated by the State and not a private employee. "Procedural ramifications of a substantive amendment," however, "do not make the amendment procedural." *Atkins*, 838 N.E.2d at 948. It is beyond question that the Illinois Whistleblower Act is a substantive act which shapes behavior occurring outside of the courtroom.

Guardsmark wants desperately for the Whistleblower Act to apply and to preempt the common law tort of retaliatory discharge because Thomas' actions, which a jury properly found were protected under the common

law tort of retaliatory discharge, would not be protected under the new Whistleblower Act. This is so, Guardsmark claims, first because Thomas did not communicate information that he reasonably believed to be a violation of a state or federal law, rule, or regulation. *See* 740 Ill. Comp. Stat. 174/15. Second, Thomas did not disclose the information to a government or law enforcement agency.[3] *See id.* Both of these are requirements under the Whistleblower Protection Act, but not under the common law tort of retaliatory discharge. By making these claims, however, Guardsmark has hoisted itself with its own petard. To state a claim under the Whistleblower Protection Act, a plaintiff must allege certain factors that are substantively different from the elements required to state a claim for retaliatory discharge under the common law tort. And as we have already established, substantive changes cannot be applied retroactively. Our holding that the Illinois Whistleblower Protection Act does not apply retroactively to claims accruing before the effective date of the Act eviscerates Guardsmark's claim in toto.

Thomas makes the related argument that the Illinois Whistleblower Act did not replace the common-law tort for retaliatory discharge, but merely offers an additional cause of action for employees. Pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure and Circuit Rule 28(e), the parties have submitted several supplemental authorities addressing the question as to whether the Whistleblower Act abrogated the common law tort. We need not decide how the Illinois Supreme Court would

---

[3] There is some evidence that Thomas reported the alleged violation to a police officer in the Village of Lemont police department. Because we have determined that the Whistleblower Protection Act does not apply, resolution of this issue is not necessary to the outcome of this case.

rule on this issue, however, as even if it did, it would not apply retroactively to the facts of this case.

Because the Whistleblower Protection Act cannot be applied retroactively, the only question that remains is whether Guardsmark's actions meet the requirements for the Illinois tort of retaliatory discharge. *See Zimmerman v. Buchheit of Sparta, Inc.*, 645 N.E.2d 877, 880 (Ill. 1994) ("a plaintiff states a valid claim for retaliatory discharge only if she alleges that she was (1) discharged; (2) in retaliation for her activities; and (3) that the discharge violates a clear mandate of public policy.") The jury found that Guardsmark's actions met the requirements for retaliatory discharge and Guardsmark wisely chose not to appeal on those grounds. After all, it is uncontroverted that Guardsmark discharged Thomas for speaking to the media about security breaches at an oil refinery. Guardsmark would be hard pressed to overturn a jury finding that the discharge violated a mandate of public policy. It is clearly important to the public to hear about breaches of security that could affect public health and safety. In any event, Guardsmark has not placed these issues before us.

Thomas' final argument is that Guardsmark forfeited its Whistleblower Act claim by failing to raise the issue until the motion for judgment as a matter of law, filed on July 27, 2005—fourteen days after the jury's verdict. Guardsmark counters that it argued from the get-go that Thomas had failed to state a claim upon which relief may be granted. This may be so, but it was not until the post-verdict motion that Guardsmark argued specifically that Thomas failed to state a claim under the Whistleblower Protection Act. Unfortunately, however, by responding substantively to the argument that Guardsmark made regarding the Whistleblower Protection Act (Plaintiff's Response to Guardsmark's Motion for Judgment as a Matter of Law, p.7; R. at 105, p.7), Thomas waived this

waiver argument. *See Cromeens, Holloman, Sibert, Inc. v. AB Volvo,* 349 F.3d 376, 389 (7th Cir. 2003).

Thomas asks this court to sanction Guardsmark, under Fed. R. App. P. 38, for filing a frivolous appeal. An appeal is frivolous if it is so meritless that the result is foreordained. *See Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652, 658 (7th Cir. 2003). There is no evidence, however, that Guardsmark continued to litigate in bad faith, and we think this case is too close to the line to warrant sanctions. *Bowman v. City of Franklin*, 980 F.2d 1104, 1110 (7th Cir. 1992) ("[t]ypically the courts have looked for some indication of the appellant's bad faith suggesting that the appeal was prosecuted with no reasonable expectation of altering the district court's judgment and for purposes of delay or harassment or out of sheer obstinacy.") *See also Ross v. RJM Acquisitions Funding LLC*, 480 F.3d 493, 499 (7th Cir. 2007) (sanctions not awarded but attorney warned that he was "skating near the edge of his pond"); *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 459 (7th Cir. 1994) (denying sanctions where appeal bordered on frivolous, but no evidence of bad faith).

The judgment of the district court is affirmed; the appellee's motion for sanctions for a frivolous appeal is denied. For violations of our rules and orders, we fine the attorneys for the defendant-appellant $1,000, payable to the court.

A true Copy:

      Teste:

 

                    _____

                    *Clerk of the United States Court of Appeals for the Seventh Circuit*